## LYMAN PATCHEN *vs.* MARK MORRISON.

When a new road is etablished, any town through which it passes may immediately make it, and it then becomes the duty of the select-men to open it; and when opened, they must cause a certificate thereof to be recorded in the town clerk's office; which recording is the proper evidence of the opening of the road, and until this is done, the owner of the land may lawfully keep it enclosed with a fence, and no one has a right to remove it.

This was an action of *trespass quare clausum fregit*, wherein the plaintiff complained that the defendant, with force and arms, on the 2d day of December, 1828, broke and entered the plaintiff's close, situated in Bennington, and then and there broke down and destroyed the fence of the plaintiff, enclosing and surrounding said close. The defendant pleaded *first*, the *general issue*, and *secondly*, in justification,

" That before, and at the time of committing the trespass in the declaration mentioned, there was, and of right ought to have been, a certain common and public highway into, through, over, and along the said close in the said declaration mentioned, for people to go, return, pass and repass, on foot, and with horses and carriages, at all times of the year, at their free will and pleasure. And because the said fence in the said declaration mentioned before and at the time of committing the trespass in said declaration mentioned, had been wrongfully erected, and was there standing in and across the said public highway, and obstructing the same, so that, without breaking and pulling down, demolishing and destroying the said fence, the said *Mark* could not then pass, and repass, into, through, over and along said highway, as aforesaid, as he ought to have done, the said *Mark*, at the said time in the declaration mentioned, in order to remove said obstructions, pulled down and destroyed the fence in the declaration mentioned, and took and carried the same to a small and convenient distance,

and there left the same for the use of the said *Lyman*, doing no unnecessary damage to the said *Lyman*, on such occasion—which are the said supposed trespasses in the said declaration mentioned, and whereof the said *Lyman* hath complained against him. And this he is ready to verify," &c.

BENNINGTON,
*February,*
1831.

Patchin
*vs.*
Morrison.

The plaintiff in his replication traversed the existence of any such highway leading through and over the land described in the declaration, as mentioned in the defendants plea ; on which issue was joined to the country.

The defendant to support the issue on his part offered in evidence, the proceedings of the road commissioners, in and for the county of Bennington, laying a road through the premises described in the plaintiff's writ ; to which testimony the plaintiff objected, and the court admitted the same. The defendant further offered to show in evidence by parol testimony, that the select-men of Bennington immediately after said road was laid by said road commissioners, paid the plaintiff the damages assessed by the said commissioners, for laying the road through the premises ; that afterwards, the said select-men, with sundry other inhabitants of said town of Bennington worked, opened, and made said road ; that said road had remained open several weeks, and had been constantly travelled and used as a common highway, when the plaintiff, after the said road had been thus travelled and used, erected a fence across the said highway ; and the defendant, being travelling along the said road upon his ordinary business, and finding the said fence across the said road, gently took the same away so far as was necessary to enable himself to pass along with his horse, which he was then riding ; to which testimony the plaintiff objected, and the court rejected the same, it being admitted that the select-men had lodged no certificate in the town clerk's office of the opening of said road. The defendant then offered to show the same facts thus rejected, with a view to mitigate damages ; but the plaintiff agreeing to claim only actual damages, the court would not permit the evidence to go to the jury, for the purpose last mentioned, and, thereupon the jury returned a verdict for the plaintiff. The defendant excepted, &c. and the case was reserved for the opinion of this court.

WILLIAMS, J., *delivered the opinion of the Court.*—The point which is presented in this case for consideration is one of considerable practical importance. When a road is laid through the lands of one of our citizens, it is necessary that he should be enabled to know when his dominion over the soil ceases, when he is no long-

BENNINGTON,
February,
1831.

Patchen
vs.
Morrison.

er at liberty to keep it enclosed ; and on the other hand every individual in community should be able to ascertain when a road becomes a public highway, so that he has an undoubted right to travel thereon, and may call on the town to remunerate him for any damage he may sustain in consequence of the insufficiency or want of repair of such road ; and the towns should know when their liability to make good such damages first arises.

Whenever a public road is opened, the right of the owners of the land to keep it enclosed ceases, and the right of individuals to the use of the road, and liability of the town commences. This opening should be by some act sufficiently open and notorious, to apprise the persons interested of their duties, rights, and liabilities ; and the present case calls on us to decide what is the evidence of such opening. In order to do this it may be proper to examine briefly the several acts which have been passed on that subject, and the history of legislation on this particular branch of law.

By the general statute of 1797, all roads within the towns were to be laid out by the select-men, or, on their neglect, by a committee appointed by the county court; but there was no provision for laying out a road through more towns than one. Hence applications were repeatedly made to the legislature, when a road was wanted through several towns, and they usually by a special act appointed a committee for that purpose, and prescribed their duties in the act ; but no provision was made, either by the general or special acts, for opening the roads. The consequence was, that when the towns or the select-men were adverse or unfriendly to the road laid out by the committee from the legislature, they neglected either to make or open the road, and thus rendered nugatory the proceedings of the committee. In 1806, an act was passed making it the duty of the select-men to open a road laid by a committee appointed by the county court, or by the legislature, within one year, and subjected them to a penalty of five dollars a month for neglect. This act was found to be insufficient, and in 1818, another act was passed still continuing this duty upon the select-men, and, in case of their neglect to perform the same, subjected the inhabitants of the town to a penalty of thirty dollars a month for each month the select-men should so neglect. In 1821 the towns were made liable to an indictment for not making and opening a road laid out by a committee, and, on conviction, subjected to a fine equal to the whole expense of making the road, to be laid out under the direction of a committee appointed by the court where the conviction was had. In 1826,

BENNINGTON,
February,
1831.

Patchin
vs.
Morrison.

that part of the law which imposed the fine of thirty dollars on the inhabitants of the town was repealed.

It will be seen from the history of the legislation on this subject, that after the act passed in 1806, it was the duty of the select-men to open all public roads, and that it occasioned repeated acts of the legislature to enforce the performance of this duty. It seems from another act which was passed, and it is within my recollection that such was the case, that disputes and doubts had arisen as to what was opening a road, and what was the proper evidence thereof; to prevent these disputes and doubts, an act was passed in 1820, requiring the select-men, when they opened any road which had been, or which should be, laid, to cause a certificate thereof, signed by them, or a major part of them, to be forthwith recorded in the town clerk's office, and declaring that the day on which such certificate was recorded should be taken and deemed to be the day of opening such road. This act continued in force until the session of the legislature last fall, (1830,) when upon a digest and revision of all the laws upon the subject of roads, a similar provision was made as to opening roads and recording the certificate thereof, as was made by the act of 1820. The Court consider that the recording of this certificate is the proper evidence of opening a road. It is an act simple, notorious, and well calculated to apprize all of their rights and duties. When this is done, all persons are to take notice of it as the opening of a public road : those duties, rights and liabilities, which arise from the opening of a public road, then commence ; and until this is done, the owner of the soil is not under obligation to remove his fences, nor can individuals intrude thereon as on a highway opened for public use, nor are the towns liable for the insufficiency thereof.

The powers of imagination have been called forth to describe the inconveniences which the traveller might be subject to from this view of the law ; but I apprehend these inconveniences are merely ideal, and have no existence except in the imagination. On the other hand, a different construction of the law would subject both the owner of the soil and the towns to far greater inconveniences and trouble than could possibly happen to the traveller from the view we have taken. These, however, are not considerations which can have much weight with a court whose duty it is to declare, and not make, the law.

It has been urged that the road, which is the subject of controversy in this action, was laid out by road commissioners under the act passed in 1827, and that the act of 1820 is not applicable to

Bennington,
February,
1831.

Patchin
vs.
Morrison.

roads laid out by road commissioners. An examination of that act, I think, will shew that it required the provision of the act of 1820 to complete the system contemplated in relation to roads; that it did not repeal that act, but would have been imperfect without it. And it is some argument in favor of this, that when the laws in relation to roads, &c., were digested and revised in 1830, the provisions of the acts of 1820 and 1827 were both preserved.

The law of 1827 gave to the road commissioners all the power which had before been exercised by the committees appointed by the supreme or county courts, and these were the same which had formerly been exercised by committees appointed by the legislature. By the 4th section, whenever the commissioners laid out a road, they were directed " to make order of the time within which such road shall be made and opened". Their decision, both as to laying, making and opening the road, and as to the damages, are final and conclusive. In their order, two things are contemplated, viz. that the road shall be made, and that it shall be opened ; and it is in the nature of an adjudication by them, imposing a duty upon the towns or their agents to perform the acts required of them, by the time limited. This order, however, neither makes nor opens the road, but requires this to be done by the towns, or the select-men, in the same manner that it was to be done before, if the road had been laid by a committee appointed by the supreme or county court, and established by such court. The order does no more than to determine that a road shall be made and opened in the place directed. For the purpose of making the road, the select-men, or agents appointed by the town for that purpose, are authorized to commence work immediately. They may enter upon the land and do all the work requisite to make the road, doing no unnecessary damage, and doing nothing more than is necessary for building and constructing the bridges and the road. The owner may still keep it enclosed with his other possessions, and make use of it for any purpose not inconsistent with the exercise of the right of the town before mentioned. When this road is made, so as to be sufficient for public travel, it is then the duty of the select-men to open the same in the manner pointed out by the act of 1820. When this is done, a public road is opened, which the owner of the soil, the traveller and the towns, must regard as such.

It has been objected to this, that the select-men may refuse to open the road, and thus deprive the public of the benefit of the ad-

judication by the commissioners.    If this be so, and if there is such
a defect in the law, it is not for the court to supply the defect.    In
my mind it is altogether repugnant to every principle which ought
to govern courts of justice, to supply an evident omission in a pub-
lic law by judicial legislation under the pretence of construction.
But it is believed the provisions of the law are sufficient and am-
ple.    The commissioners can compel the towns to make the road :
they can levy and collect of the town a sum sufficient for that
purpose, and cause the same to be expended in making the road
under the direction of a committee appointed by them.    When
the road is made with the money collected of the town, it is not to
be expected that the select-men will neglect or refuse to open the
same.    But if they should so neglect, we think it would be such
a wanton disregard of their duty as would subject them to an in-
dictment at common law for their neglect.

The conclusion to which we arrive is this, that when the com-
missioners establish a road, the towns may immediately make it ;
that it is the duty of the select-men to open the road when they
think proper ; but when they do open it, they must cause a cer-
tificate thereof to be recorded in the town clerk's office ; that
until the road is opened, the owner of the land may lawfully keep
it enclosed with a fence, and that no one can wantonly throw it
down.    The plaintiff, therefore, had a right to have his fence
around the land on which this road was laid, and the defendant
was not justified in throwing it down.

The judgement of the county court is therefore affirmed.

*Blackmer,* for plaintiff.

*Isham & Smith,* for the defendant.