## TOWN OF CALAIS v. COUNTY ROAD COMMISSIONERS

[795 A.2d 1267]

No. 00-194

February 25, 2002. The Town of Calais appeals from a superior court order affirming a decision of the County Road Commissioners requiring the Town to repair portions of Still Brook Road, a class 4 highway. The Town contends the trial court: (1) lacked jurisdiction; (2) misconstrued the controlling statutory scheme; (3) erroneously failed to conduct a de novo hearing; and (4) improperly excluded certain evidence. We agree with the contention that the trial court misconstrued the governing statutes, which vest the Town selectboard with broad discretion to determine the necessity of making repairs to class 4 highways. Accordingly, we reverse.

Appellees Sylvia and Steven Spooner brought this action to compel the Town to repair the portion of Still Brook Road which leads to their house and is classified as a class 4 highway. The road had washed out in a storm and, as a result, contained very deep ruts. The Town declined to make the repairs, relying on its class 4 road policy, enacted by the Town selectboard in 1996, which provides that maintenance of class 4 highways will be done by adjacent landowners who "shall bear all costs associated with said fourth class road . . . project," except that the Town Road Commissioner will evaluate each class 4 highway annually and "as time permits will perform minimal [summer] maintenance." Appellees appealed to the County Road Commissioners, who eventually found that the Town should "provide reasonable access and safety" for appellees by spending up to $1,500 to fill in washes and restore waterbars.

On appeal by the Town, the superior court required it to go further, and return the road to its former condition with no cost limit. The trial court held that the Town had not fulfilled its statutory responsibility to promote the public good, necessity, and convenience under 19 V.S.A. § 310(b), which provides:

> Class 4 highways may be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town, or may be reclassified using the same procedures as for laying out highways and meeting the standards set forth in section 302 of this title.

This appeal followed.

The Town relies on the plain language of § 310(b), and its road maintenance policy adopted pursuant to that section. We agree that the statute supports the Town's road maintenance policy, which in turn authorizes exactly the position the Town took here. It is axiomatic that in construing a statute our objective is to effectuate the legislative intent. See *Sagar v. Warren Selectboard*, 170 Vt. 167, 171, 744 A.2d 422, 426 (1999). We rely on the plain meaning of the words in a statute because we presume they reflect the Legislature's intent. See *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335-36, 576 A.2d 450, 452 (1990). The plain, ordinary meaning of the word "may" indicates that a statute is permissive, not mandatory. See *In re D.L.*, 164 Vt. 223, 234, 669 A.2d 1172, 1180 (1995); *Dover Town Sch. Dist. v. Simon*, 162 Vt. 630, 631, 650 A.2d 514, 516 (1994) (mem.). This conclusion is reinforced when the same statute elsewhere employs the mandatory "shall," indicating a conscious decision to grant discretion through use of the alternative "may." See *In re Stacey*, 138 Vt. 68, 71, 411 A.2d 1359, 1361 (1980). It is, of course, essential to harmonize a statute by construing its constituent parts to form a consistent whole, affording every provision significance and meaning. See *Sagar*, 170 Vt. at 171, 744 A.2d at 426.

Here, the surrounding language only reinforces the conclusion that the statute grants the Town discretion in determining whether to maintain and repair class 4 highways. Section 310(a) states, in pertinent part, that a town "*shall* keep its class 1, 2 and 3 highways . . . in good and sufficient repair during all seasons of the year." (emphasis added). Section 310(b), in direct contrast, provides that "[c]lass 4 highways *may* be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town, or may be reclassified using the same procedures as for laying out highways." (emphasis added). The use of "shall" and "may" in such close proximity conveys a conscious design to impart to the words their ordinary and distinct meanings, imposing a mandatory duty upon towns to maintain class 1, 2, and 3 roads, while affording general discretion to maintain class 4 roads. The superior court decision and the dissent would make a town's responsibility to maintain a class 4 road indistinguishable from its responsibility to maintain a class 3 road, despite the very different specification of these responsibilities in the statute.

Also reinforcing the highly discretionary nature of the selectboard's powers is the list of standards to which the selectboard must adhere: the necessity of the town, the public good, and the convenience of the inhabitants. Even if the statute described the selectboard's power using "shall" rather than "may," the broad nature of the factors to be considered necessarily involves a high degree of discretion in their consideration.

The Town has commendably implemented § 310(b) through a general policy, avoiding the kind of ad hoc decision-making that may lead to discriminatory

application of discretion. Although the policy establishes less Town responsibility for road repair and maintenance than appellees desire, it is fully consistent with the discretion accorded by § 310(b). Indeed, it is noteworthy that although the trial court's ruling generally ignored the Town's road policy and refused to follow it, it did not explicitly declare it invalid.

Clearly, therefore, under the statutory scheme described above, the selectboard's decision to refuse to pay for maintenance and repair of Still Brook Road must be upheld. The class 4 highway policy expressly provides that the Town will not pay for the substantial road rebuilding sought by appellees, and the policy is valid under the statute. This is the straightforward and direct answer to the Town's appeal.

The trial court and appellees have cited four ostensible reasons for a contrary conclusion. All involve a misreading of the clear legislative intent and, therefore, are not persuasive.

First, appellees and the dissent rely on the statutory provisions for obtaining review of a town's decision not to repair a road. See 19 V.S.A. §§ 971-976. This argument assumes, however, that county road commissioners are not bound to respect the discretion of the town selectboard as defined in § 310(b), but are instead entitled to trump the selectboard's decision through their own view of what the public good requires. It makes no sense to read the statute as authorizing the selectboard to act under one legal standard, and then authorizing the commissioners to overrule the selectboard under a different standard. The review statutes are plainly "procedural rules," not substantive provisions. Thus, they provide a remedy; they do not purport to define duties.

Furthermore, the legislative history is inconsistent with appellees' reasoning. The procedures set forth in §§ 971-976 antedate the current highway classification system and the differential repair duties contained in that system. For example, the language specifying the commissioners' review power, now contained in 19 V.S.A. § 973, comes from a 1933 amendment to the statute, see 1933, No. 81, § 2. In 1933, the statutory specification of the selectboard's responsibility fit with the review standards to be used by the county road commissioners. Prior to the adoption of the current classification system in 1973, the responsibility of towns to maintain and repair their local highways was broad and undifferentiated. Former § 931 provided: "Towns shall keep such state aid highways in good repair at all seasons." 1957, No. 250, § 14. The statute was revised, however, in 1973 as part of a package of amendments designed to ensure that state aid to local highways went only to roads that are passable year round. See Sagar, 170 Vt. at 173, 744 A.2d at 427 (reviewing legislative history of 1973 amendments). The 1973 amendments installed a new classification system based on four categories of highways (classes 1, 2, 3, and 4), see 19 V.S.A. § 302(a), imposed minimum maintenance standards for class 3 highways or better, see id., provided for annual state appropriations for class 1, 2, and 3 highways, see id. § 306, and amended § 931 (later recodified as § 310) to provide that towns "shall" keep their class 1, 2, and 3 highways in good and sufficient repair, and "may" maintain their class 4 roads as they determine the public good and necessity requires. See 1973, No. 63, § 20.

Under appellees' and the dissent's theory, the Legislature amended the statute to give the selectboard discretion over the maintenance and repair of class 4 highways, but the county road commissioners can use pre-amendment procedural powers to overrule the exercise of the selectboard's discretion. That construction of the applicable statutes is irrational. The only rational construction

of the statutes, one fully consistent with their broad language, is that the commissioners, as well as the superior court and this Court, must review a selectboard's decisions on repair of a class 4 road consistent with the broad new power the Legislature gave the selectboard in this area.*

Appellees' second rationale is that § 310(b) makes reference to the option of reclassification, suggesting that the selectboard must either maintain and repair a class 4 highway or reclassify it to a trail, for which it has no responsibility of "maintenance, repair or safety." 19 V.S.A. § 310(c). This again misperceives the statutory meaning. It is true that towns may reclassify class 4 roads. See § 310(b) (class 4 highways "may be reclassified using the same procedures as for laying out highways and meeting the standards set forth in section 302 of this title"). Although the language references the procedure for laying out highways, appellees' argument is that it was intended to refer to the procedure for laying out trails, despite the fact that the Legislature defined a trail as not a highway and there are no standards for trails in § 302. See *id.* § 302(a)(5).

Properly understood, the reclassification language in § 310(b) refers to the option to reclassify a class 4 highway to a higher classification to gain state financial aid. See 19 V.S.A. § 306 (setting forth annual legislative appropriations for class 1, 2 and 3 highways). This is also the most effective remedy for a citizen who is dissatisfied with a town's limited responsibilities for a class 4 highway. See, e.g., *Hansen v. Town of Charleston*, 157 Vt. 329, 330-32, 597 A.2d 321, 321-22 (1991) (affirming trial court order requiring reclassification of town highway from class 4 to class 3 to obtain repair and plowing service); *Catlin v. Town of Hartland*, 138 Vt. 1, 2, 409 A.2d 596, 596-97 (1979) (affirming trial court's decision to reclassify road from class 4 to class 3 in order to require town to maintain road); *Gilbert v. Town of Brookfield*, 134 Vt. 251, 253, 356 A.2d 524, 526 (1976) (upholding trial court determination that town had employed discriminatory criteria in classifying certain roads as class 4 highways — which it failed to plow during winter — while classifying others which were indistinguishable as class 3 and providing maintenance, repair, and plowing services). Under the proper construction of the statutory language, a town is not required to reclassify a highway as a trail in order to provide only minimal maintenance for it.

Third, the trial court relied upon other statutes and decisions to find that the Town had a duty to repair the road in this case. Specifically, it found that 19 V.S.A. § 304(a)(1) requires that the selectboard exercise its discretion over repair and maintenance of roads only for the "safety of the public" and that the safety of the public requires maintenance and repair here. We held in *Sagar* that the reference to the "safety of the public" in § 304(a)(1) does not mean that safety is the sole factor in determining the policy and action of the selectboard. *Sagar*, 170 Vt. at 177, 744 A.2d at 429-30. With respect to class 4 highways, § 310(b) clearly provides for a wider range of factors.

The trial court also relied upon *Morey v. Fitzgerald*, 56 Vt. 487 (1884), for the proposition that the Town is responsible to repair a washout of a road. That case, however, arose under an old statutory scheme that has been substantially modi-

---

* Our unpublished decision in *In re T.H. 52*, No. 98-151 (Vt. Jun. 8, 1999), cited by the dissent, simply affirms the trial court's authority to conduct a de novo hearing in reviewing a decision of the county road commissioners. It did not address the court's or commissioners' authority to review a town's decision as to whether, or to what extent, to maintain a class 4 road.

fied to eliminate this specific responsibility.

Finally, apart from the specific statutory sections, the trial court suggested as a policy matter that the Legislature could not have intended to allow the Town to provide only minimal maintenance for its class 4 highways, observing that under the Town's policy "it is difficult to imagine a circumstance under which any class 4 road would ever be repaired." The trial court went on to state that the public good must require repair at least "following a natural disaster." The trial court's policy may be better than the one adopted by the Legislature. It may, for example, be fairer to order the Town to repair than to put appellees through the more uncertain and difficult procedure of seeking reclassification of the road. That is not, however, the policy adopted by the Legislature, and we must implement the Legislature's policy choice rather than the court's.

In reversing the trial court's decision, we do not hold, as the dissent claims, that a selectboard's discretion is virtually unlimited so that no review of its decision to refuse to repair or maintain a class 4 road is possible. A citizen can prevail if the citizen shows that the town has not acted pursuant to its policy or has acted in an arbitrary and discriminatory fashion. See, e.g., *Couture v. Selectmen of Berkshire*, 121 Vt. 359, 364-65, 159 A.2d 78, 82 (1960) (although selectboard enjoys broad authority over town roads, mandamus will lie where there appears an arbitrary abuse of power). In this case, however, there was no showing that the selectboard's action was arbitrary or discriminatory or was unsupported by its policy. Accordingly, the petition to the county road commissioners and the superior court must fail.

We conclude, in sum, that the Town properly refused to repair the class 4 road in question under its class 4 highway policy. Our conclusion renders it unnecessary to address the Town's additional arguments.

*Reversed.*

Morse, J., dissenting. Although I agree with the Court that municipalities are granted discretion with regard to the repair and maintenance of class 4 roads, I believe that discretion must be exercised on an individual, case-by-case basis and the exercise of that discretion is subject to review — on an individual basis — under the statutory scheme. Because the statutory scheme providing for review of towns' decisions regarding road repair was properly followed in this case and the trial court's decision is supported by the record, I would affirm. Accordingly, I dissent.

I cannot agree with the proposition that the county road commissioners and courts cannot review the substance of a decision with respect to individual class 4 roads and are restricted to considering only whether a municipality's general road policy has been applied consistently and in a nondiscriminatory manner on an historic basis; I believe the decision-making regime established by the Court is at odds with the review scheme established by statute. Nor do I agree with the Town's argument that 19 V.S.A. § 310(b) provides that a municipality's decision with respect to a class 4 road is unreviewable.

As we have said previously, the statutory scheme created by 19 V.S.A. §§ 971-976 is "aimed at allowing citizens to obtain county review of a town's decision not to repair a road or bridge." *Villeneuve v. Town of Essex*, 167 Vt. 618, 620, 713 A.2d 815, 816 (1998) (mem.). Nothing in those sections limits their applicability to only class 1, 2 and 3 roads. Nevertheless, the Court reads § 310(b), which provides that "[c]lass 4 highways may be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town," to

amend that scheme so that only decisions with regard to class 1, 2, and 3 roads are reviewable on an individual basis.

The Court emphasizes that the statutory provisions establishing the different classes of roads and the standards for their maintenance were enacted after those providing for review of town decisions regarding repair and maintenance of roads and concludes that, while the provisions governing class 1, 2 and 3 roads did not affect the review statutes, the subsection governing class 4 roads was, in effect, an amendment to the review provisions. I believe the timing of the enactment cuts exactly the other way.

We must presume that the Legislature was aware of the existence of the statutes providing for review and that if it wished to exempt class 4 roads, or establish a separate regime for review of decisions on class 4 roads, it would have done so explicitly. See 1A N. Singer, Sutherland Statutory Construction § 22.35, at 300 (5th ed. 1993) (noting "legislature is presumed to know the prior construction of the original act or code" when amending it); see also *id.* § 22.34, at 297 (amending provisions should be read with remaining provisions from original act as if enacted as one entity and should be interpreted so as not to conflict). I see nothing in the language of § 310(b), either explicit or implicit, that does so. Cf. *id.* § 22.13, at 215 ("Amendments by implication . . . are not favored . . . ."); see also *Vt. Tenants, Inc. v. Vt. Hous. Fin. Agency*, 170 Vt. 77, 83, 742 A.2d 745, 749 (1999) ("In construing statutes, we have presumed that no repeal by implication is intended."). In fact, § 310(b) does not address itself at all to review of a town's decision by either the commissioners or the superior court. Like § 310(a) (establishing standards for class 1, 2 and 3 roads), it merely establishes the standard for maintaining class 4 roads. Although it gives towns discretion, it must be read in conjunction with the statutes providing for review. See *In re*

*A.C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984) ("statutes relating to the same subject matter should be read in pari materia"); Singer, *supra*, § 22.35, at 300 (noting this principle also applies to an amended statute with respect to preexisting statutes on the same subject matter).

Indeed, we have previously interpreted the review statutes to allow for review of individual decisions, including those respecting class 4 roads. In an unpublished decision concerning the very same portion of the road at issue in this case, we passed on the question of the nature of the hearing before the trial court when a decision of the Town to install a speed bump was challenged. We agreed with the Town's position in that case that appeals from reports of the county road commissioners should be heard de novo. *In re T.H. 52*, No. 98-151, slip op. at 2 (Vt. Jun. 8, 1999) (stating 19 V.S.A. § 976 indicates that "the superior court may make its own record of facts upon which to base its conclusions of law" and finding "no error in the superior court conducting a hearing de novo"). Although unpublished decisions are not binding precedent, in light of the Town advocating the same position in this case, our review should be confined to whether the superior court's decision, following the de novo hearing provided for by statute, is supported by the record.

With respect to the merits of this particular case, the residents of the road at issue, who could no longer access their full-time residence because the road was washed out, petitioned the Town to make the necessary repairs. The Town did not respond, and the residents petitioned the superior court under 19 V.S.A. §§ 971-972 seeking an inspection of the road by the county road commissioners. The commissioners submitted a report to the court recommending the Town repair the road. Under 19 V.S.A. § 976, the Town appealed this determination to the superior court, arguing that it was

entitled to a de novo hearing on the matter. The superior court agreed and conducted a de novo hearing on the merits, after which it likewise determined that the Town should repair the road. This is precisely the process contemplated by the statutory scheme.

The following evidence was introduced at the hearing before the superior court: As the result of severe storms in the summer of 1998, which led to Washington County being declared a federal disaster area, the road at issue was washed out and became impassable. As the Town concedes, the washouts were up to six feet deep in places. A member of the Town's selectboard testified before the superior court that individuals other than the residents of the road use the class 4 portion and, following the washouts, the road was no longer safe to travel. The Town's position, however, was that the residents were responsible for the repair of the road to make it passable. The residents testified that they can no longer get basic services to their house because of the condition of the road. They also testified to difficulties obtaining insurance as a result of the lack of such services, including fire protection.

As the Town does not dispute this evidence, and it supports the trial court's disposition in this case, I would affirm. I am authorized to say that Justice Johnson joins in this dissent.

Motion for reargument denied April 9, 2002.