NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 10

No. 2015-248

| | |
|---|---|
| David Demarest, et al. | Supreme Court |
| v. | On Appeal from<br>Superior Court, Chittenden Unit,<br>Civil Division |
| Town of Underhill | |
| | October Term, 2015 |

Dennis R. Pearson, J.

Christopher D. Roy of Downs Rachlin Martin PLLC, Burlington, for Petitioners-Appellees.

John W. O'Donnell of Bergeron, Paradis & Fitzpatrick LLP, Burlington, for
  Respondent-Appellant.


PRESENT: Dooley, Skoglund, Robinson and Eaton, JJ., and Hoar, Supr. J., Specially Assigned


¶ 1.    **EATON, J.**    The Town of Underhill (Town) appeals from a trial court order affirming a decision of the County Road Commissioners requiring the Town to maintain a segment of Town Highway 26 (TH 26), a Class 4 highway.[1] The Town contends that the trial court misconstrued and incorrectly applied the statutory provisions for the maintenance of Class 4 roads and erroneously established its own maintenance standard. We agree with the Town and reverse.

---

[1] TH 26 is also known as Fuller Road or New Road.

¶ 2.     TH 26 has existed, in some form, for nearly 150 years. In its present configuration, TH 26 is a 1.54 mile-long, single-lane roadway that intersects Irish Settlement Road to the north, running south until it terminates near a beaver pond at the beginning of the Crane Brook Trail, a legal trail that goes on to intersect with Pleasant Valley Road. Because of the roadway's gradient, which rises from about 910 feet at the intersection with Irish Settlement Road to 1040 feet at its highest point, runoff generally drains in a constant stream towards the intersection with Irish Settlement Road.

¶ 3.     In 2001, the Town sought to reclassify a segment of TH 26 between Irish Settlement Road and Pleasant Valley Road as a legal trail, and the remainder of the roadway as a Class 4 highway. Following protracted litigation, these changes became effective in June 2010, and TH 26 became part of the Town's six miles of Class 4 highways.

¶ 4.     Prior to the reclassification of TH 26, the Town performed periodic maintenance and repair work to both the roadway and the twenty-two culverts that were installed along and under TH 26 over the past thirty years. Although the ditches along TH 26 do not appear to have been maintained since 2010, the Town has continued to do some work, primarily the addition of base material to the roadway. For example, in April 2013, the Town put down 115 cubic yards of 1-and-¼ inch fractured stone. Following severe storms in late May and early June 2013, which caused increased runoff, the Town made repairs to culverts #1 through #4 at or near the intersection with Irish Settlement Road. The Town also put down another 108 cubic yards of crusher run gravel in late June 2013, followed by another 62 cubic yards in August 2013.

¶ 5.     Appellees David Demarest, Jeffrey Moulton, and Jonathan Fuller own property on TH 26 in the Town of Underhill. Appellees Fuller and Demarest reside at their properties full time, while two additional residents along the road are part-time residents. On February 28,

2

2012, appellees filed a notice of insufficiency pursuant to 19 V.S.A. § 971 requesting maintenance of TH 26, which had been largely deferred following the roadway reclassification. By letter dated March 1, 2012, the Town denied appellees' allegations, asserting that TH 26 was being maintained to the extent required by the necessity of the Town, the public good, and the convenience of the inhabitants of the Town. In April 2012, appellees brought an action for the appointment of County Road Commissioners pursuant to 19 V.S.A. § 971 et seq. to compel the Town to undertake repairs of TH 26. Specifically, appellees sought repairs and maintenance to drainage, culverts, and the road surface, so as to make it reasonably safe and accessible for appellees' use as residents of the Town.

¶ 6. Three Commissioners were appointed by the trial court. Following proceedings, as required by statute, the Commissioners filed a report with the trial court on June 26, 2013.[2] The Commissioners found that TH 26 had undersized culverts, inadequate drainage, insufficiently spaced culverts, unmaintained ditches, lack of proper road crown, evidence of road flooding due to unmanaged beaver pond construction, and inadequate road cover. The Commissioners' report unanimously concluded that TH 26 was "out of repair or unsafe for travel, and that the public good demand[ed] that [TH 26] . . . be repaired." The Commissioners acknowledged that under the Town's policy, "the town is not required to regularly maintain a class [4] highway," although "class IV highway[s] may be maintained to the extent required by the necessity of the town, the public good, and the convenience of the inhabitants of the town." Despite the Town's policy, however, the Commissioners found that "by making improvements

_____

[2] The Commissioners adopted a report filed by appellees' engineer, which indicated that at least five of the culverts are in substandard condition and present a safety risk because they could fail, which could result in the critical intersection of TH 26 and Irish Settlement Road being over-topped or washed away in the next big storm.

3

and maintaining the road in the past [the Town] created a situation where property owners abutting [TH 26] have a justifiable expectation that maintenance and repair will continue." The Commissioners thus ordered the Town to bring all of TH 26 into compliance with all standards and specifications applicable to any private road in the Town serving three or more residences, specifically ordering that the Town replace all five of the culverts that it had graded as "fair" or "poor."[3] According to the Commissioners' estimate, the cost of the updates to TH 26 would be $68,000. The Town appealed the Commissioners' report pursuant to 19 V.S.A. § 976.

¶ 7. On appeal, the trial court entered judgment against the Town, adopting the Commissioners' report in part and modifying it in part. Providing that the Town could not "act arbitrarily and must still observe some minimal road maintenance and/or construction criteria which will ensure basic safety and reliability," the trial court required the Town to undertake many, but not all, of the Commissioners' recommendations. Specifically, the trial court found the following repairs or maintenance to be either "minimal and basic improvements necessary on [the] record," required for "basic safety and convenience," necessary "to restore [TH 26] to basic class 4 condition," or "consistent with minimal observance of the standard of necessity, public good, and convenience": the replacement of five culverts rated as "fair" or "poor"; the addition of minimally adequate base and top surface material over all culverts; widening of the road in at least a few spots to twelve feet to allow for the passage of emergency vehicles; ditching maintenance along the entire length of the road; and rebuilding of the most seriously defective stonework around the culverts. The Town moved for reconsideration, which the trial court denied.

---

[3] Culverts #2, #3, #14, #15, and #22 were rated by the Town as "poor" or "fair." At least eleven other culverts were rated as "good."

¶ 8. This appeal followed. The Town contends that the trial court erred in requiring maintenance of TH 26 because the decision whether or not to undertake repairs of a Class 4 highway is within the Town's discretion. Specifically, the Town raises two arguments: (1) that the trial court erred in in its interpretation of 19 V.S.A. § 310(b) by failing to recognize that § 310(b) allows for discretion in determining whether to maintain and repair Class 4 highways as long as that discretion is not exercised in an arbitrary and discriminatory fashion; and (2) that this error resulted in the trial court's establishing and applying its own maintenance standard, which was different from both § 310(b) and the Town of Underhill Road Policy. In Vermont, a town's duties "with respect to roads are entirely statutory." Sagar v. Warren Selectboard, 170 Vt. 167, 171, 744 A.2d 422, 426 (1999). "The applicability of this statutory duty is a question of law, which [this Court] reviews de novo." In re Town Highway No. 20, 2012 VT 17, ¶ 61, 191 Vt. 231, 45 A.3d 54 (mem.).

¶ 9. In Town of Calais v. Cty. Road Comm'rs, 173 Vt. 620, 621, 795 A.2d 1267, 1268 (2002) (mem.), we held that 19 V.S.A. § 310(b) grants towns discretion in determining whether to maintain and repair Class 4 highways. The list of factors to be considered in § 310(b), which includes the necessity of the town, the public good, and the convenience of the inhabitants, reinforces the highly discretionary nature of the town's powers. This discretion is not unlimited, however, and citizens challenging a town's decision under § 310(b) can prevail if they show "that the town has not acted pursuant to its policy or has acted in an arbitrary and discriminatory fashion." Id. at 624, 795 A.2d at 1271. A town's decision will therefore be upheld if supported by its road policy and based on standards or principles. Id.; see also In re Handy, 171 Vt. 336, 345, 764 A.2d 1226, 1235 (2000) (describing "a decision arrived at without reference to any standards or principles" as arbitrary and capricious ad hoc decisionmaking).

5

¶ 10. In Town of Calais, we affirmed the town's decision declining to perform maintenance and repairs of a Class 4 highway, finding that it was pursuant to a general town policy that maintenance of Class 4 highways was the responsibility of adjacent landowners, except with respect to "minimal [summer] maintenance." 173 Vt. at 620, 622, 795 A.2d at 1269 (alteration in original). We found that the town had "commendably implemented § 310(b)," thereby "avoiding the kind of ad hoc decision-making that may lead to discriminatory application of discretion." Id. at 622-23, 795 A.2d at 1269.

¶ 11. The Town of Underhill Road Policy echoes the permissive language in § 310(b), providing that "[a] class [4] highway may be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town," and adding that, "[a]ccordingly, the town is not required to regularly maintain a class [4] highway." In its decision, the trial court indicated that because the Town's road policy mirrors § 310(b), it lacks "any real substance against which to determine whether [it was] in compliance with its own policy." Instead, the trial court read additional requirements into the standard, such that it also considered whether the Town "observed some minimal road maintenance and/or construction criteria which will ensure basic safety and reliability."

¶ 12. Although we agree with the trial court's description of the Town's road policy as largely parroting the language of § 310(b), the standard in Town of Calais does not require Class 4 road policies to add to the language of § 310(b). Nor does that standard require substantive analysis of the road policy itself. Rather, Class 4 road policies must implement § 310(b). Although the Town's road policy adds little to the statutory language and provides little guidance, it implements § 310(b), emphasizing the discretionary nature of the decision to maintain Class 4 highways. The Town's decision declining to undertake repairs or maintenance

of TH 26 was made pursuant to its policy, which specifically provides that the Town "is not required to regularly maintain a class [4] highway."

¶ 13. Whether the Town's decision was arbitrary or discriminatory depends on the Town's duty under its road policy, which includes consideration of the Town's necessity, the public good, and the convenience of the inhabitants of the Town. Opining that the Town's decision amounted to standardless, ad hoc decisionmaking and an abuse of discretion, the trial court acknowledged that while it is within the Town's "statutory prerogative" to spend less on the maintenance of Class 4 highways than appellees might prefer, this prerogative must be "within reason and based on non-arbitrary factors." The trial court's exploration of this prerogative ended there, however. Rather than addressing the Town's decisionmaking process, the trial court undertook its own analysis of the need for repairs and maintenance, finding certain repairs recommended by the Commissioners to be necessary minimal and basic improvements and still others to be "basic safety and convenience requirements," or "consistent with minimal observance of the standard of necessity, public good, and convenience," and "needed to restore [TH 26] to basic Class 4 condition." Although the trial court did find the Town's decision to be arbitrary, it was "from a strictly road maintenance and proper engineering perspective," rather than resulting from the Town's implementation of its policy, and was without "actual discriminatory animus against the residents of [TH 26]."

¶ 14. The Town, relying on the language in its road policy, determined that TH 26 "is being maintained to the extent required by the necessity of the Town, the public good and the convenience of the inhabitants of the Town." It is not for this Court to consider the merits of the Town's justification or reasoning, or that the trial court agree with the Town's decision or analysis. Our decision in Town of Calais requires only that the Town based its decision on the

7

standards and principles in its road policy, if consistent with § 310(b), and that its decision was not arbitrary or applied in a discriminatory fashion. There is no evidence of an arbitrary or discriminatory purpose in the implementation of the Town's policy concerning Class 4 highways. Accordingly, there is no basis for a finding that the decision was arbitrary or outside the scope of the Town's broad discretion.

¶ 15. We note appellees' concern that the broad discretion under § 310(b) binds the Commissioners and the trial court, leaving them virtually powerless to reach a differing conclusion absent a showing of arbitrary and discriminatory decisionmaking. This argument was raised, and addressed by this Court, in Town of Calais. We again note, as we did in that case, that although "it is difficult to imagine a circumstance under which any class 4 road would ever be repaired," even when required by the public good, that is not "the policy adopted by the Legislature, and we must implement the Legislature's policy choice rather than the court's." Town of Calais, at 624, 795 A.2d at 1271. Nearly fifteen years have passed since that decision, but the Legislature has yet to amend either § 971 et seq. or § 310(b) to clarify the Commissioners' role, or lack thereof, as it relates to repairs and maintenance of Class 4 highways. We are left to restate our conclusion from Town of Calais rejecting the argument that § 971 et seq. provides for review of a town's decision not to repair a roadway in favor of the argument that "[t]he only rational construction of [§ 310(b) and § 970 et seq.], one fully consistent with their broad language, is that the commissioners, as well as the trial court and this Court, must review a selectboard's decisions on repair of a class 4 road consistent with the broad new power the Legislature gave the selectboard in this area." Id. at 622-23, 795 A.2d at 1271.

¶ 16. Although the Town's road policy establishes less town-responsibility for Class 4 highway repair and maintenance than appellees desire, or even than the Commissioners'

8

recommend, it is fully consistent with the discretion accorded by § 310(b). Both appellees and the Commissioners are bound to respect the Town's discretion, and cannot "trump the selectboard's decision through their own view of what the public requires." Id. at 622, 795 A.2d at 1269. If appellees do not agree that the Town's decision satisfies the necessity of the town, the public good, or the convenience of the inhabitants of the Town, the "[c]onduct of elected officials, detrimental to the interests of the town but not amounting to arbitrary abuse of authority justifying the issuance of a writ, is subject to regulation at the polls." See Couture v. Selectmen of Town of Berkshire, 121 Vt. 359, 365, 159 A.2d 78, 81 (1960).

Reversed. Judgment entered for defendant, Town of Underhill.

FOR THE COURT:

Associate Justice