STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 140-12-18 Vtec |

| 14-16 Peru St. Boundary Adjustment | DECISION ON MOTIONS |

PBGC LLC and BPJS Management, LLC, (together Appellant) appeal the City of Burlington Development Review Board's (DRB) denial of Appellant's boundary line adjustment application concerning 14 and 16 Peru St., Burlington, Vermont (the Project). The City of Burlington (City) opposes the application. Presently before the Court is the City's motion for summary judgment.

Appellants are represented by Matthew T. Daly, Esq. The City is represented by Kimberlee J. Sturtevant, Esq.

**Legal Standard**

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. Once the moving party meets the initial burden of showing that no material facts are disputed, the burden shifts to the non-moving party to establish a triable issue of fact. Pierce v. Riggs, 149 Vt. 136, 138 (1987). In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

As the moving party, the City bears the burden of demonstrating that there is no genuine dispute as to any material fact. Brisson Gravel Extraction Application, No. 34-3-13 Vtec, slip op. at 8 (Vt. Super. Nov. 07, 2014) (Walsh, J.); *see also* N. Sec. Ins. Co. v. Rossitto, 171 Vt. 580, 581 (2000) (mem.) (citation omitted) (noting that a material fact is one that "might affect the

1

outcome"). An assertion that a fact is not disputed must be supported by either "a separate and concise statement of undisputed material facts or a separate and concise statement of disputed facts," or a showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.R.C.P. 56(c)(1).

## Findings of Fact

We recite the following facts solely for the purpose of deciding the pending motions for summary judgment. These facts do not constitute factual findings, as factual findings cannot occur until after the Court conducts a trial. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.).

1. Mr. William Bissonnette is the principal agent of PBGC, LLC and BPJS Management, LLC. Mr. Bissonnette operates these companies through Bissonnette Properties.

2. BPJS Management, LLC (BPJS) owns 16 Peru Street in Burlington, Vermont (16 Peru St.). 16 Peru St. is located within the Residential Medium Density (RM) District.

3. In 2017, BPJS performed renovation work at 16 Peru St. without obtaining zoning or building permits from the City of Burlington.[1] After these renovations were completed, Appellants sought a zoning permit (Zoning Permit 18-0495CA).

4. On March 8, 2018, Appellant's zoning permit was denied, citing an encroachment into a westerly side yard setback. This decision was not appealed.

5. In 2018, PBGC, LLC (PBGC) purchased 14 Peru Street, Burlington, Vermont (14 Peru St.). 14 Peru St. is directly adjacent on the west side of 14 Peru St. and is also located in the RM District.

6. After PBGC purchased the abutting property, 14 Peru St., Appellant made dual applications to relocate the common boundary line in an attempt to bring the 16 Peru St. Property into compliance with the westerly side yard setback requirement. Appellant attached as a part of both applications a site plan depicting the boundary line adjustment.

---

[1] The renovation work at 16 Peru St. included a raised roof, demolished rear porch, erecting a new 2-story addition, new siding, windows, roofing, lighting, graveled rear yard, and conversion of a 2-car garage into storage.

7.     14 and 16 Peru St. Boundary Line Site Plan depicting the boundary line adjustment:



City's Exhibit B (for illustrative purposes); *see also* City's Exhibit C (attaching the same site plan).

8.     16 Peru St. currently has a lot frontage of 23.74 ft.

9.     14 Peru St. currently has a lot frontage of 30 ft.

10.    14 and 16 Peru St. each have a single-family home located on the property.

11.    On July 20, 2018 Appellant submitted a draft Parking Easement Deed to the DRB. This deed granted PBGC parking rights to two full sized parking spaces on BPJS's lot (16 Peru St.) to be used by tenants of 14 Peru St.

12.    On December 6, 2018, the Burlington Development Review Board (DRB) denied Appellant's application for a boundary line adjustment concerning 14 and 16 Peru St.

13.    Appellant timely appealed to this Court.

## Discussion

The City moves for summary judgment, pursuant to V.R.C.P. 56 (c), on both Questions 1 and 2 (a–h) of Appellant's Statement of Questions. The City contends that (1) Burlington Comprehensive Development Ordinance (CDO) § 5.3.6 (c) is enforceable and (2) the Appellant's proposed boundary line adjustment application does not meet the requirements of the CDO. [2] Appellant counters that CDO § 5.3.6 (c) is vague and offers that genuine disputed issues of material fact remain.

---

[2] Appellant's Question 2 contains multiple subparts (a–h) addressing whether Appellant's application complies with specific provisions of the CDO including: § 4.4.5 and Table 4.4.5; §§ 5.5.2; 5.2.5; 3.3.5; 5.3.6; 6.1.2; Article 8 and Table 8.1; and § 10.1.5.

### a. Question 1: Whether § 5.3.6 (c) of the CDO is Unconstitutionally Vague.

When reviewing a municipal land use decision, we begin with the presumption that a zoning regulation is constitutional. *See* In re Highlands Development Co., LLC, No. 194-10-03 Vtec, slip op. at 13 (Vt. Envtl. Ct. Feb. 2, 2010) (Wright, J.) (*citing* Hunter v. State, 2004 VT 108, ¶ 31, 177 Vt. 339); *see also* In re Letourneau, 168 Vt. 539, 544 (1998). Due to this presumption, a "proponent of a constitutional challenge has a very weighty burden to overcome." Badgley v. Walton, 2010 VT 68, ¶ 20, 188 Vt. 367; In re LaBerge NOV, 2016 VT 99, ¶ 18, 203 Vt. 98 (upholding a Town's noise ordinance against void-for-vagueness arguments).

In determining whether a regulation is void for vagueness we consider whether the regulation "'specif[ies] sufficient conditions and safeguards' to guide applicants and decisionmakers" and prevents the exercise of discretion in an arbitrary or discriminatory fashion. In re Appeal of JAM Golf, LLC, 2008 VT 110, ¶ 13, 185 Vt. 201 (*quoting* Town of Westford v. Kilburn, 131 Vt. 120, 122 (1973) (noting that a vague regulation allows for "unbridled discrimination" by a Court or municipal body tasked with its interpretation)). A regulation must balance "between the flexibility a municipal panel must have in reviewing a specific development proposal and a landowner's right to know what standards govern an application." Hinesburg Hannaford CU, No. 129-9-12 Vtec. slip op. at 6 (Vt. Super. Ct. Envtl. Div. Mar. 4, 2015) (Walsh, J.) (*citing* Rogers v. Watson, 156 Vt. 483, 491 (1991)); *see also* Kilburn, 131 Vt. at 124 (stating that regulations should be "general enough to avoid inflexible results").

The City argues that CDO § 5.3.6 (c) is not arbitrary, capricious, vague, or unclear as it gives clear notice of when a change is permitted to a nonconforming lot. Appellant counters that § 5.3.6(c) is a "catch-all" provision that does not contain clear standards for when a change is permitted to nonconforming lots and further notes that a boundary line adjustment application does not constitute a "change to a structure" under § 5.3.6 (c). CDO § 5.3.6 (c) provides that:

> No change shall be permitted to any nonconforming lot which would have the effect of increasing the density at which the property is being used, or increasing the structure located upon such lot, if the dimensional requirements and standards, including parking, of the underlying zoning district are not met as a result thereof. Allowance of adaptive reuse and residential conversion bonuses shall be an exception to the foregoing standards. A lot shall be considered

nonconforming if there is not sufficient parking, as determined by the standards provided in Article 8. In such cases where a parking waiver or waivers may be or have been legally granted, such a waiver shall not be considered to increase the degree of nonconformity.

CDO § 5.3.6 (c).

Appellant argues that this provision fails to expressly enumerate or identify circumstances, such as a lot line adjustment, under which a change may be permitted to a nonconforming lot.[3] We disagree. The plain language of the ordinance provides clear guidance limiting changes to nonconforming lots that increase density at the property or the structure on a lot "if the dimensional requirements and standards, including parking" are not met. CDO § 5.3.6 (c). In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262 (stating that Courts utilize familiar rules of statutory construction and "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance"). This provision expressly identifies that two types of changes, an increase in density or structure, must meet dimensional standards, such as minimum lot frontage described in CDO Table 4.4.5-1 and parking depicted in CDO Table 8.1.8-1. *See also* CDO § 13.1.2 (defining structure and density); § 13.1.1 (noting that the word "building" includes "structure").

Generally, a bylaw need not provide concrete, specific, or numerical standards to be enforceable. In re Pierce Subdivision Application, 2008 VT 100, ¶ 21, 184 Vt. 365, 375 (noting a bylaw encourages flexible development and is enforceable even when it fails to provide "concrete" or "specific" standards). Indeed, § 5.3.6 (c) need not specifically enumerate which specific dimensional or parking standards are applicable. *See* In re Trahan, 2008 VT 90, ¶ 20 (*citing* In re Stowe Club Highlands, 164 Vt. 272, 279 (1995)) (looking to the ordinance as a whole);

---

[3] Appellant repeatedly argues that a lot line adjustment does not involve any change to the "structure of the lot" as grounds for demonstrating that § 5.3.6 is vague. This argument, however, appears to challenge the scope of this Court's proceeding when addressing a boundary line adjustment and the applicability of § 5.3.6 (c) rather than disputing the vague language of § 5.3.6 (c). Here, the DRB below concluded that Appellant's development of a rear structure on 16 Peru St., which caused an encroachment of a side yard setback, satisfies the definition for an "increased structure" and therefore falls under § 5.3.6 (c). Appellant does not address whether the development of the rear addition constitutes a "structure" for purposes of § 5.3.6 (c) and instead argues that a boundary line is not included within the scope of § 5.3.6 (c). While Appellant may argue that this proceeding is limited in scope to a boundary line dispute and therefore does not involve an "increased structure," we see no legal foundation for concluding that § 5.3.6 (c) is arbitrary or vague on this basis.

<u>Kilburn</u>, 131 Vt. at 124 (noting that this Court looks to the entire bylaw, not just a specific subsection to determine the standard to be applied).

Appellants further argue that § 5.3.6 (c) creates ambiguity by stating that where a parking waiver "may be or [has] been legally granted, such a waiver shall not be considered to increase the degree of nonconformity." In looking to the ordinance as a whole, CDO § 5.3.5 (a)(1) clarifies that a change to a nonconforming structure is only permitted if the change "may reduce the degree of nonconformity and shall not increase the nonconformity. . .." *See* <u>In re Trahan</u>, 2008 VT 90, ¶ 20; <u>In re Pierce</u>, 2008 VT 100, ¶ 24 (noting that general and specific requirements contained in the bylaw generate sufficient standards to evaluate compliance). Thus, § 5.3.6 (c) serves to provide an exception that allows for greater flexibility by providing applicants a mechanism for bringing a parking nonconformance into compliance with Article 8. CDO § 5.3.6 (c) (providing another exception for "adaptive reuse and residential conversion bonuses"); *see* <u>In re Handy</u>, 171 Vt. 336, 348–349 (2000) (cautioning against inflexible requirements).

For the reasons above, we conclude that CDO § 5.3.6 (c) provides sufficient notice of the conditions necessary for changing a nonconforming lot for applicants and decisionmakers and includes clear limitations to prevent arbitrary or discriminatory enforcement. As Appellant fails to overcome the presumption of constitutionality, we **GRANT** the City's motion for summary judgment on Appellant's Question 1.

   b. **Question 2 (a–h): Whether Appellant's Application Complies with the CDO.**

This Question and its subsections concern whether Appellant's application for a lot line adjustment between 14 Peru St. and 16 Peru St conforms with the CDO. Appellant purchased 14 Peru St. for the purpose of remedying a minimum westerly side yard setback encroachment on 16 Peru St., which was generated from the construction of an unpermitted rear addition.

The City raises concerns with the proposed boundary line, arguing that it (1) creates a new lot width nonconformity, pursuant to CDO Table 4.4.5-1; and (2) creates a new nonconformity concerning minimum parking standards at 14 Peru St., pursuant to CDO Table 8.1.8-1, for an alleged parking area. For these reasons, the City asserts that the application does not comply with the CDO.

In this motion, this Court is tasked with assessing whether there is a genuine dispute of material fact concerning the compliance of the proposed boundary line adjustment with multiple provisions of the CDO.  These provisions include: residential districts and minimum lot frontage under CDO § 4.4.5, frontage on a public road under § 5.2.2; review standards under § 6.1.2; exceptions to yard setbacks under § 5.2.5; parking under Article 8; Nonconforming structures under § 5.3.5; changes to nonconforming lots under § 5.3.6; and lot line adjustments under § 10.1.5.  Given the complex and interlaced nature of these issues, we address the CDO provisions in the order listed above to provide greater clarity.

     I.       *Question 2(a): Whether Appellant's Application complies with § 4.4.5 and Table 4.4.5 of the CDO.*

Appellant's Question 2(a) addresses residential districts and minimum lot frontage.  CDO § 4.4.5 states that the RM district is "intended primarily for medium density residential development in the form of single-family detached dwellings and attached multi-family dwellings."  Here, Appellant's application depicts single-family residences located respectively at 14 and 16 Peru St.  In their motion for summary judgment, the City does not appear to challenge whether the 14 or 16 Peru St. developments are consistent with the definition of a single-family detached dwellings or attached multi-family apartments.  Therefore, as this provision does not appear to be disputed, we move on to a discussion of CDO Table 4.4.5.  *See* V.R.C.P. 56 (e) (stating that the Court may consider facts undisputed where unsupported).

CDO Table 4.4.5-1 requires that RM Districts have a minimum lot frontage of 30 feet.  At present, it is undisputed that 16 Peru St. has a nonconforming lot frontage of 23.74 ft and 14 Peru St. has a conforming frontage of 30 ft.  The City argues that Appellant's application does not provide a mechanism for the dimensionally required lot frontage at 16 Peru St. to become conforming and that the proposed boundary line along the side will cause 14 Peru St. to narrow along the side boundary lines.[4]  The City, however, provides no measurement indicating to what

---

[4]  The DRB below found that 16 Peru St. "will be further constricted by the proposed new westerly boundary line on the proposed northerly terminus.  For both lots, the lot width will diminish below the standard of this table, and in the case of 16 Peru Street, increase the level of non-conformity of the lot."  In re 14-16 Peru Boundary Adjustment ZP18-0894LL and ZP18-0895LL, Findings of Fact & Decision, at 2 (City of Burlington Dev. Rev. Bd. Dec. 4, 2018).  The DRB, however, does not provide dimensions of the proposed change in lot frontage to 16 Peru St.  In addition, the

extend the proposed new boundary diminishes or enhances the 23.74 ft lot frontage of 16 Peru St. or the 30 ft. lot frontage of 14 Peru St.

Appellant offers an affidavit from its engineer, David Marshall, in support of the assertion that the boundary line adjustment does not make either lot more non-conforming as the application retains the 30 ft frontage of 14 Peru St. and 23.74 ft frontage of 16 Peru St. Indeed, both the 14 and 16 Peru St. applications include an attached site plan that does not appear to depict a change in the lot frontage for either property. Here, Appellant has provided evidentiary material sufficient to show a genuinely disputed material fact in the record. V.R.C.P. 56 (c). Moreover, pursuant to CDO § 5.3.5 (a)(1) a change to a nonconforming structure is only permitted if the changes "shall not *increase* the nonconformity." CDO § 5.3.5 (a)(1) (emphasis added) (noting that a change "may reduce the degree of nonconformity"). Under this provision, we see no legal basis mandating that Appellant "provide a mechanism for the dimensionally required lot frontage at 16 Peru to become conforming" as the City suggests.

We therefore **DENY** the City's motion for summary judgment on Appellant's Question 2(a). To the extent that Question 2(a) asks whether Appellant's application complies with CDO Table 4.4.5, this narrowed issue remains before the Court.

II.     *Question 2(b): Whether Appellant's Application complies with § 5.2.2 of the CDO.*

CDO § 5.2.2 requires frontage on a public road. While the City again alleges that Appellant's Application does not provide a mechanism to bring 16 Peru St.'s 23.74 ft frontage into compliance with the required 30 ft. frontage, the City does not dispute that both 14 and 16 Peru St. have frontage on a public road in conformance with CDO § 5.2.2. Indeed, Appellant has provided and affidavit from their engineer asserting both properties have frontage on a public road and a site plan that clearly depicts frontage for both properties on Peru St.

---

DRB does not identify any basis that the application proposes to alter the lot frontage of either 14 or 16 Peru St. Here, the only means of increasing the degree of nonconformity of 16 Peru St. is to increase the width of lot frontage for 14 Peru St. Such an action would not render 14 Peru St. noncompliant with the CDO as the property would have more than 30 ft lot frontage. Thus, the DRB's representation that "For *both* lots, the lot width will diminish below [30 ft]" does not hold water. Id. at 2 (emphasis added).

We therefore conclude that there is no dispute of material fact concerning whether 14 and 16 Peru St. have frontage on a public road as all parties acknowledge that both properties have frontage on Peru St. We therefore **DENY** the City's motion for summary judgment on Question 2(b) of Appellant's Statement of Questions.

III. *Question 2 (f): Whether Appellant's Application complies with § 6.1.2 of the CDO.*

CDO § 6.1.2 states that the "size and arrangement of new lots shall reflect and perpetuate the existing development pattern of the surrounding neighborhood" and "[i]nterior lot lines extending from a street *should* be perpendicular or radial to the street right of way line [ROW line] *to the greatest extent feasible*." CDO § 6.1.2 (c) (emphasis added). The City argues that Appellant's proposed boundary line is not perpendicular to the ROW line as it "arcs" and "veers" to the east and west, resulting in a wavy line inconsistent with existing development patterns. Appellant points to the permissive language of § 6.1.2 as indicating flexibility and notes that this offset of orthogonal extension from the ROW line is less than 1.7 degrees.

Given the clear language of the ordinance in providing a nonmandatory standard by using the term "should" coupled with the phrase "to the greatest extent feasible," it is difficult to comprehend how the City contends a less than 1.7 degree offset is irreconcilable with § 6.1.2 (c). Town of Calais v. Cnty. Road Comm'rs, 173 Vt. 620, 621 (2002) (mem.) ("The plain, ordinary meaning of . . . "may" indicates that a statute is permissive, not mandatory."); Marsigli Estate v. Granite City Auto Sales, Inc., 124 Vt. 467, 470 (1965) (stating Legislature's use of "may" in statute indicates decision is discretionary); *see also* State v. Rafuse, 168 Vt. 631, 632 (1998) (mem.) (noting that the use of the term "shall" indicates the legislature's intent for the provision to be mandatory). Moreover, the surrounding language of § 6.1.2 (c) reinforces the conclusion that this particular provision grants flexibility due to the clear differential use of "should" and "shall." *See* CDO § 6.1.2 (c) ("The size and arrangement of new lots *shall* reflect . . . existing development patterns . . . . Lots *shall* be created in such a way as to enable their development . . . ."). Indeed, the use of the term "should" and "shall" in such close proximity "conveys a conscious design to impart to the words their ordinary and distinct meanings." Town of Calais, 173 Vt. 620, 621 (2002) (assessing the use of "shall" and "may" in proximity). In addition, while the CDO does not

9

comment on the use of "should," § 13.1.1 expressly states that "shall" is "mandatory and not merely directory."

The City's position seems to indicate that any offset, however negligible, must be incongruous with the standard set out in § 6.1.2 (c), which ignores the permissive language of the regulation and the interest in avoiding inflexible results. <u>Kilburn</u>, 131 Vt. at 125; <u>Rogers v. Watson</u>, 156 Vt. 483, 491 (1991) (recognizing that zoning is an "area where some imprecision and generality is necessary and inevitable"). For this reason, the City has not met their burden of demonstrating that there is no genuine dispute of material fact. We therefore **DENY** the City's motion for summary judgment on Question 2 (f).

IV.     *Question 2(c): Whether Appellant's Application complies with § 5.2.5 of the CDO.*

CDO § 5.2.5 concerns side yard setbacks and exceptions to yard setback requirements for parking areas. Generally, CDO § 5.2.5 (a)(2) requires that side setbacks in the RM district are 10% of the lot width or the average of side yard setbacks of 2 adjacent lots on both sides. CDO Table 4.4.5-3 (listing residential district dimensional standards); CDO § 5.2.5 (a)(2). The CDO also provides specific exceptions to yard setbacks, pursuant to CDO § 5.2.5 (b)(5), which allows parking areas and driveways to project into a required side setback, "provided they are no less than five (5) feet from a side or rear property line where such a setback is required."

Appellant offers that the proposed boundary line will reduce the east side yard setback of 14 Peru St. from 8 ft to 6.5 ft. Appellant contends that this reduction does not render 14 Peru St. any more noncomplying because the modification is greater than the 3 ft. (10% of the lot width) minimum side yard setback. Concerning 16 Peru St., Appellant states that the existing 1 ft nonconforming side yard setback is proposed to be increased to a complying 2.4 ft. (10% of the lot width) along the portion of the unpermitted rear addition.[5] In support of this assertion, Appellant refers to the affidavit of its engineer, David Marshall.

The City argues that there exists an "alleged driveway" within 1 ft. of the property line and an "asserted parking area" along the 16 Peru St. boundary, which triggers the application of

---

[5] In their motion, the City purports that the minimum setback of 16 Peru St. is 2.3 ft.

CDO § 5.2.5 (b)(5) governing exceptions to side yard setbacks. The City asserts that the proposed boundary line modification will reduce the existing nonconforming setback from the property line on 14 Peru St. below the required 5 ft., pursuant to CDO § 5.2.5 (b)(5). This, the City argues, would "increase the level of nonconformity of the site relative to a required setback from [Appellant's] asserted parking area" which the City notes "is approximately 1 ft. from the existing property line." In support of these assertions, the City offers the boundary line adjustment application with an attached site plan and refers to the DRB decision below.

Appellant, through the affidavit of their engineer, counters that the width between 14 and 16 Peru St. ranges from 8.8 to 9.5 ft and notes that the standard 9 ft. x 20 ft. gravel parking surface straddles the property line of the two buildings, resulting in an existing setback of 0 ft. By this reason, Appellant states that the proposed boundary line adjustment does not make the existing parking setback any more nonconforming.

Appellants have provided sufficient evidence, though the affidavit of their engineer, to show a genuine dispute of material fact concerning whether the side yard setback of 16 Peru St. is at least 10% of the lot width and whether there exists a parking area and driveway no less than 5 ft. form a side or rear property line. Accordingly, this Court finds a genuine dispute of material fact remains and we **DENY** the City's motion for summary judgment on Question 2(c).

V.      *Question 2 (g): Whether Appellant's Application complies with Article 8 and Table 8.1 of the CDO.*

CDO Article 8 address minimum off-street parking requirements and minimum parking dimensions for single family residences in Neighborhood Districts. CDO Table 8.1.1-1 requires a minimum of 2 parking units per dwelling unit and Table 8.1.11-1 establishes that 90° angle parking requires a width of 9 ft. Here, the City asserts that the existing site plan would only allow for a parking area with a width of 5 ft. located on 14 Peru St. that would be further reduced to between 3.5 and 4 ft. by the proposed boundary line adjustment, thereby eliminating a second parking space.

In response, Appellant offers an affidavit from their engineer, which states that the "southeast portion of the 14 Peru St. lot has historically been used for parking" and a concrete

11

walk on the east side of 14 Peru St. is connected to the gravel parking surface. The affidavit notes that the narrow width between 14 and 16 Peru St. ranges from 8.8. to 9.5 ft., which forces the standard 9 ft. x 20 ft. parking space to straddle the property line. Appellant also offers a draft parking easement deed, which seeks to address the CDO Table 8.1.11-1 requirement for 2 parking spaces. The easement purports to provide PBGC, LLC, the owner of 14 Peru St., a permanent easement for parking located at 16 Peru St.[6]

Based on the facts presently before the Court and giving Appellants the benefit of all reasonable doubts and inferences, we find that there are genuine disputes as to the material facts concerning whether the "asserted parking area" complies with Article 8 and whether the proposed easement resolves these issues. *See* Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (giving the non-moving part the benefit of all reasonable doubts and inferences). For these reasons, we **DENY** the City's motion for summary judgment on Question 2(g) of Appellant's Statement of Questions.

VI.     *Question 2(d): Whether Appellant's Application complies with §5.3.5 of the CDO.*

CDO § 5.3.5 (a) requires that "any change or modification to a nonconforming structure, other than to full conformity under this Ordinance, . . . may reduce the degree of nonconformity and shall not increase the nonconformity." CDO § 5.3.5 (a)(1) further states that existing nonconforming single family homes in residential districts that project into side or rear yard setbacks may be vertically expanded so long as the expansion does not further encroach into the setback.[7] CDO § 5.3.5 (a)(1).

Here, the City appears to assert that the application does not comply with § 5.3.5 because it "increases the level of nonconformity to a required setback on 14 Peru St. relative to the asserted driveway" that is approximately 1 ft. from the existing property line and increases the degree of nonconformity with respect to the minimum parking spaces required at 14 Peru St.

---

[6] The City notes that no parking waivers have been granted to either 14 or 16 Peru St.

[7] The DRB below notes that unpermitted vertical structural expansion occurred at 16 Peru St. In re 14-16 Peru Boundary Adjustment ZP18-0894LL and ZP18-0895LL, Findings of Fact & Decision, at 4 (City of Burlington Dev. Rev. Bd. Dec. 4, 2018). An After-the-fact permit was later sought and denied due to encroachment into a required setback and thereafter was not appealed. Id.

As addressed above, this Court has identified a dispute of material fact concerning the side yard setback conformity with CDO § 5.2.5 and regarding minimum off-street parking and parking dimensions parking under Article 8. As CDO § 5.3.5 requires a showing that a change or modification does not increase nonconformance of a structure, there is a genuine dispute of material fact concerning whether the application complies with § 5.3.5. For this reason, we **DENY** the City's motion for summary judgment on Question 2(d) of Appellant's Statement of Questions.

VII.      *Question 2(e): Whether Appellant's Application complies with § 5.3.6 of the CDO.*

As stated above, CDO § 5.3.6 governs changes to a nonconforming lot. CDO § 5.3.6 (c) states that no change is permitted if the change would "increase[] the density at which the property is being used, or increase the structure located upon such lot, if the dimensional requirements and standards, including parking, of the underlying zoning district are not met as a result thereof." Compliance with this provision requires a showing that the property in question is nonconforming and evidence that a change that increases the structure located on a lot would conform with the dimensional requirements and standards, such as lot frontage, setbacks, and parking.

It is undisputed that 16 Peru St. is a nonconforming lot as it does not meet the minimum lot frontage pursuant to CDO Table 4.4.5-1. There remains, however, a dispute of material fact concerning whether the alleged parking area and driveway at 14 Peru St. meet the dimensional requirements under Article 8. Taking all reasonable doubts and inferences in favor of Appellant, we conclude that the City has not met its burden of proving there is no dispute of material fact. Thus, we **DENY** the City's motion for summary judgment on Question 2(e) of Appellant's Statement of Questions.

VIII.     *Question 2(h): Whether Appellant's Application complies with § 10.1.5 of the CDO.*

We next address whether Appellant's application complies with lot line adjustment requirements under the CDO. CDO § 10.1.5 (c)(1) states that a boundary line adjustment application may be denied if the "proposed adjustment will result in the creation of a nonconforming parcel or nonconforming buildings or structures or yard areas or any non-conforming dimensional standard." In its motion for summary judgment, the City again argues

that the proposed boundary creates a new nonconformity concerning lot frontage pursuant to CDO Table 4.4.5-1 and an increased level of nonconformity on 14 Peru St. due to the side yard setback, pursuant to CDO Table 4.4.5-3. Concerning the "asserted parking area and driveway" at 14 Peru St., the City argues that the proposed boundary increases nonconformity with minimum parking standards under CDO Table 8.1.8-1.

As stated above, this Court has concluded that there is a genuine dispute of material fact concerning the proposed boundary line compliance with setback and parking dimensional standards. For these reasons, we **DENY** the City's motion for summary judgment on Question 2(g) of Appellant's Statement of Questions.

### Conclusion

For the foregoing reasons, we **GRANT** the City's motion for summary judgment on Appellant's Question 1 and **DENY** the City's motion with respect to Question 2 (a–h). Remaining before the Court is Appellant's Question 2 and its subparts (a–h).

Electronically Signed: 5/18/2021 8:41 AM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division