BENNINGTON,
February,
1832.

JOHN S. PETTIBONE *vs.* WILLIAM PURDY.

A highway which was established before the passing of the act of Nov. 7, 1800, cannot, when subsequently discontinued, be legally set over under the second section of that statute, except to the person on whose land it is situated.

This was ejectment for land in Manchester. The case was before this court at the last term, when the judgment of the court, awarding a new trial, was pronounced by the late Justice Thompson. Hutchinson Chief Justice at that time expressed a dissenting opinion. The evidence at each trial below was the same, with this difference, that the matters shown in defence on the first trial were offered and rejected on the last. Judgment having passed for the plaintiff in the county court, the case was again brought up on the following bill of exceptions:

On the trial aforesaid the plaintiff to support said issue on his part, gave evidence tending to show, that one Samuel Pettibone, the father of the plaintiff, went into possession of a lot of land, of which the demanded premises are a part, about the year 1779; and continued thereof possessed, excepting a part of said lot east of the demanded premises, till the time of his death in the year 1822. And that the plaintiff, as his *devisee*, at the time of the death of said Samuel entered into the possession of said lot, and continued thereof possessed, excepting the said part thereof east of said demanded premises, up to and at the time of the commencement of this action.

Evidence was also given tending to show, that the said demanded premises were part of the highway, leading through said lot of land, which *highway* had been duly surveyed and laid out by a committee appointed by the county court for that purpose, in the year 1799, on the cite of the highway, as the same had been used and travelled many years prior to 1799.

Evidence was also given tending to show, that the said Samuel Pettibone, in the year 1786, conveyed the part of said lot of land east of said highway to one Amos Chipman, bounding him, on the west, by the east line of said highway.

Evidence was also given tending to show, that at the time of the commencement of the plaintiff's action, the defendant was in possession of the demanded premises, having embraced the same within his enclosure.

The defendant to support the said issue on his part offered to show and give in evidence, that prior to the year 1825, he had purchased, and entered possession of, the part of said lot conveyed by said Samuel to said Amos as aforesaid, and bounded on the

BENNINGTON,
February,
1832.
Pettibone
vs.
Purdy.

west by the east line of said highway as aforesaid, under the aforesaid title of said Amos, and was the owner and possessor thereof up to and upon the 17th day June 1825, and ever since. And further offered to show and give in evidence, that a new road or highway, running through the said land of the defendant, being a part of said lot, and eastwardly of, and nearly parallel with, the aforesaid road, was surveyed, laid out and established; and thereupon the said highway and road which passed over the said demanded premises was discontinued, and the said old road, or discontinued highway, set over to the defendant, by a committee appointed by the county court of Bennington, June term, 1835:—reference being had to the records and proceedings of said court and committee therein, which are part of the case.

To which evidence, so offered by the defendant, the plaintiff objected, and the court rejected the same. To which decision the defendant excepts, and prays the same to be allowed, and pass to the supreme court for adjudication.

*Mr. Sargeant for defendant.*—The title set up by the defendant to the land is derived from the same having been set over to to him, in part compensation for damages, sustained by means of a road having been laid through his land, by a committee duly appointed by Bennington county court, in pursuance of the second section of the act of 1800.—Rev. Stat. 435.

The rejection of the record on the trial below necessarily sets that statute at defiance; and we now present the question of the validity of that statute, under no small degree of embarrassment, from the fact that at the last term of this court, on a hasty hearing, the same was, by a majority of the court, pronounced unconstitutional.

Nothing short of a deliberate conviction of the correctness of the principle for which we contend, would have prompted the defendant's counsel to urge upon the court a reconsideration of the case.

The subject of roads must necessarily be at all times under the control of the government; and *that control* cannot with safety be curtailed. Every citizen of the republic must in this, as in other things, surrender some portion of his private interests, where the good of the whole require it.

The framers of our constitution wisely foresaw this necessity, and have provided that private property may be made subservient to public use, and no government can be strong or durable without such power; whilst every attempt, in one branch of government,

BENNINGTON,
February,
1832.

Pettibon
vs.
Purdy.

to weaken or lessen the powers of the other, inevitably paralises the strength of the whole.

If the principle can be maintained, that the legislature has the power assumed in the passage of the statute in question, there was one defence complete in the action.

Without calling in question the common law doctrine, that the soil of the highway belongs to the adjoining owner, (subject to the public easement,) we claim for the legislature the right to appropriate the use of a discontinued road, to compensate for the use of other lands, which the government may see fit to take for public use. And this is all the statute of 1800 amounts to. And thus far it has its full operation, without violence to the common law rights of the adjoining owner.

But how is this power of the legislature regarded in other governments, where the rights of citizens are shielded with a jealousy equal to ours?

By the statute of 13 Geo. III. sec. 13, 14,—3 Bac. Abr. 59, powers are given, even to sell the soil of a discontinued highway, giving the adjoining owner the first right of purchase, and reserving to him mines and minerals only.

So in the statutes of New York and Massachusetts, in their charters for *canals, turnpikes, and railroads*, they have after providing for the payment of appraised damages, declared the corporations seized and possessed of the soil in fee simple.

We have yet to learn that the constitutionality of these statutes have ever been doubted, either in England, or our sister states.

It is difficult to imagine a distinction between the taking real estate for governmental use, and the taking personal property for like purpose. And it cannot be pretended that in case of personal chattels, the government obtains only the right to a temporary use of it. The constitution means no such thing.

By the doctrine of the common law, the lord of the manor, or adjoining owner, has the exclusive right of depasturing the highway through his premises; yet no jurist will question the constitutionality of our several statutes, restraining certain animals from running at large in the highway, although it should restrain vested rights.

The statute now in question was in full operation nearly *thirty* years. Selectmen in the several towns constantly practiced under it; our courts uniformly accepted and ratified the doings of their committees, in setting over roads under it; and consequently large amounts in valuable real estate are holden under such titles, in every town in the state. The legislature has uniformly sanctioned not

BENNINGTON,
*February*,
1832.

Pettibone
*vs.*
Purdy.

only its constitutionality, but its expediency, by suffering it to remain unrepealed, It has also escaped the searching operation of no less than four councils of censors. In short, it has received the sanction of every branch of government.

So far as the present case is concerned, the plaintiff has no equitable claim upon the land. His ancestor must be presumed to have received its full value, when it was taken from him by the government. And certainly, the government had the right to keep it until the end of time. It matters not, then, to the plaintiff, what use the plaintiff makes of it.

To overset the defendant's title now, would be taking from him that for which he has been compelled to pay (not voluntarily,) a full consideration, and give it to one who has no conscientious claim to it, and answer no other purpose, but to preserve an arbitrary *dictum* of the common law, which is at war with all our civil institutions.

*Bennett and Aiken contra.*—The common law relating to public highways may be reduced to a few simple propositions.—

1. Highways may be created by proceedings under the writ *ad quod damnum*, by dedication of the land by the owner, or by user, from which such dedication may be inferred. They may also be created in pursuance of acts of the legislature. 2 Stark. Ev. 661 to 667.—2 Vt. Rep. 48.

2. By their creation the public gains no interest in the lands over which they pass, but only a servitude or easement, viz. the right of making, repairing, and keeping in repair the road, and freely passing thereon.—3 Com. Dig. 30.—Chem, A, 2.—2 Strange, 1004.—Strange, 1238,—6 East. 154.—11 East. 51.—1 Burrow. 133.

3. The fee remains all the time in the original proprietor, or his assigns, who are entitled to the full use and profits thereof, to all above and under ground, saving only the easement, and who may maintain actions for violation of their rights.—1 N. H. Rep. 16.— 2 Mass. Rep. 127.—4 Mass. Rep. 427.—6 Mass. Rep. 454.— 1 Con. Rep. 103.—2 John. Rep. 357, 424.

4. Consequently, when a highway is discontinued, no new interest passes to the lord of the soil, but his land is merely freed from the servitude.—7 John. 106.—15 John. 447.—2 Vt. Rep. 378, *Ferre* vs. *Doty.*

As to the question, who is lord of the soil? the rule is this: the owner of the land on both sides of the highway is taken *prima fa*

BENNINGTON,
February,
1832.

Pettibone
vs.
Purdy

*cie* to be owner of the fee of the road. And if different proprietors own on the different sides of the road, each is taken *prima facie* to own the centre. These, however, are but presumptions, which may be rebutted, by showing the fee to be in one alone, or neither of the adjacent proprietors.—Com. Dig.—Chem. A, 2.—11 East. 51.—Lofft. 358.—15 John. Rep. 447.

On these principles the premises in question are most clearly vested in the plaintiff.

But the defendant claims, and offers evidence to show, that the premises have become his, by virtue of a setting over, in pursuance of the act of 1800.

The land in question, as appears by the case, had been dedicated by the proprietor, Samuel Pettibone, to the use of the public for a highway, and had been used as such long prior to the passing of the act of 1800.

1. But suppose this road had been laid out since 1800, we should insist, still, that the defendant has not got the land by this setting over.

If any right is to pass by setting over under this act, it must be the fee. Nothing remains for the public; nothing for the former proprietor. The entire estate must therefore pass, if any thing. But at what time did the public acquire this entire estate? Not at the time when it ceased to want the use. It must be, then, at the time of the laying out of the road.

The *fee* in highways would be useless to the public, while to the citizen such a doctrine would be extremely vexatious and injurious.

Besides, we contend that such a doctrine would be inconsistent, as well with the spirit as the letter of the constitution. *Public necessity* is the only ground on which private property can be taken at all for public uses. An easement is all that public necessity requires. And the public can no more be justified in taking a greater interest in property than is needful, than by taking no greater quantity than is needful.—Declaration of Rights, Art. 102.

2. But it is unnecessary to rest the question on this broad ground. The road in question existed long before the passage of the act of 1800. The plaintiff, or those under whom he claims, then held their rights to the premises as at common law. *Were invested with the fee, the right of enjoyment and occupancy not inconsistent with the easement, and the right of full, entire, and absolute occupancy, as soon as the easement should be removed.*

The defendant claims that *by virtue of this act,* these rights,

then vested in the plaintiff, might be divested and taken away, and given to *him*; and that without recompense, and without the consent of the proprietor. This doctrine we resist entirely.

BENNINGTON,
*February*,
1852.
————
Pettibone
*vs.*
Purdy.

It is now to be regarded as settled constitutional law, that the legislature cannot divest rights of property acquired under previously existing laws, and transfer them without the assent of the parties. The opposite doctrine has been constantly retisted by every judicial tribunal in this country, as inconsistent with all just principles of government.—2 Dallas, 304.—3 Dallas, 383.—2 D. Chip. Rep. 88.—1 Aik. Rep. 121.—1 Aik. Rep. 314.—2 Aik. Rep. 293.—2 Vt. Rep. 518.—2 Peters' Rep. 656, *Wilkinson* vs. *Leland*.

It is no answer to these cases to say, that most of them have arisen on *private* acts, whereas this is a *public act.* To give a retrospective effect to a general act is merely multiplying the evil. Even in England this act would be construed prospective only ?— 2 Mod. 310.—4 Burrow. 2460. Much more should it be so construed here; where, by the theory of government, the supreme power is with the people, and the power to pass retrospective laws is no where delegated.—10 Mass. Rep. 439.—7 John. Rep. 477. 15 John. 447.—*Hill et al* vs. *Sunderland*, February term, 1831, in this county.

It cannot be contended that the doctrines of the common law are "inapplicable to our local situation and circumstances, or repugnant to the constitution of this state." They have been uniformly recognized as law by our courts.

3. In the third place, we resist the act in question, because it authorizes recompense to be made otherwise than in *money*, which is required by the constitution.—2 Mass. Rep. 125.—2 Dallas. 304.—Declaration of Rights, Art. 2.

The public cannot be said, with any propriety, to be a purchaser of the land over which a road passes. It is "the damage done to the landowner by laying the road" that entitles to compensation, and fixes the amount.—Comp. Laws, 427, 423. This may be equal to the value of the land, may be more or may be less.—5 Mass. Rep. 435.—9 Mass. Rep. 388.

The opinion of the court was delivered by

ROYCE, J.—In the argument of this case it has not been directly contended, that by legislative enactment the estate of one citizen can be taken, without compensation, and bestowed upon another. It would be no less vain to attempt the support of such a principle,

BENNINGTON,
February,
1832.

Pettibone
vs.
Purdy.

than it is needless, at this day, to expose its repugnance to the genius of our constitution and government, and to all consistent ideas of civil liberty or the law of property. Neither can it be admitted that property may be so taken for public use. It is only upon an equivalent, previously paid, or secured by pledge of the public faith express or implied, that private property can be made subservient even to the exigencies of government. The effect to be given to the statute under consideration must therefore depend on the extent of those rights which are left to the proprietor, when a highway is laid and established through his land. And the rules of law on this subject, considered apart from the statute in question, are too firmly settled to admit of controversy. By the establishment of an ordinary highway, the public acquires but an easement in the land; the right of making, repairing, and using the highway, as an open passage or thoroughfare. Subject to this right the owner of the soil retains, and may exercise all his rights of property therein. He may take from it stone, timber, and the like, which are not wanted for the support of the highway. And he may vindicate his qualified right of possession by action of trespass or ejectment, against those who attempt to appropriate the land to any other than this public purpose. From these principles it regularly follows, that when the highway is discontinued, the land becomes discharged of this servitude, and the owner is restored to his former and absolute right. We are not apprised of any statutary provisions, previous to this act, by which these rules of general law are varied or controlled. No statute had directed payment to be made for the land itself, on which a highway was laid, but only for damages occasioned by the existence of the highway, while it should be continued. And in many cases even damages were not assessed; and where it was considered by the proper board that none were actually sustained, and where the land was unimproved.

The original title of the plaintiff covered the land in dispute, whilst the conveyances under which the defendant held included no part of it, being expressly limited to the east line of the highway. Consequently, the plaintiff showed a clear right to recover, unless his title was divested, and transferred to the defendant, by the doing of the road committee in June 1825.

Those proceedings were had under the second section of the act of Nov. 7, 1800. That section in terms extends to two cases; one, where the old and new road run through the lands of the same person; the other, where the old road adjoins the person's land, through which the new road is laid. In the first case the

statute may be executed without objection; as the select men or
committee have only to estimate the comparative injury, of having
a highway established in one portion of the party's land, instead of
another. The act of setting over the old road would be available,
as evidence that such road was discontinued. The same may be
said with reference to one half of the old road, where it is owned
in moities by adjoining proprietors. But here the old highway ad-
joined the defendant's lands, and no part of it was originally his.
It now becomes material to notice the fact, that the highway in
question was established before the passage of this statute. The
case states it to have been surveyed and laid out in 1799, on the
site of a previous highway, which existed when the plaintiff's an-
cestor conveyed to Chipman in 1786. And it is also to be re-
marked, that the first provision for setting over old roads was con-
tained in this act of 1800. These previous highways must there-
fore have been established without reference to any such provision.
If damages were assessed, they could not have been regulated by
the contingency, that the land itself, at some after period, might
be conveyed in this manner to another person. According to the
principles already advanced, the plaintiff had, therefore, a perma-
nent title and beneficial interest in the land, when it was set over
to the defendant. It is not pretended that the statute contemplates
a compensation to be made in these cases, or that any was in fact
made in this instance. Here, then, was an attempt to transfer this
estate of the plaintiff, against his will and without an equivalent.
And should this be sanctioned, the operation of the statute might
be stated thus:—Had this highway been situated elsewhere on the
plaintiff's land, he would have had the incumbrance of the road
removed for nothing; whereas he now loses the land which was
covered by it. To obviate this conclusion, the statute has been
represented, as having merely provided a mode of continuing the
public right in the land. And this, it is insisted, may be done by
transferring it to an individual. But the right of the public was
only a right of way or passage; and it is absurd that this should be
the subject of transfer to the defendant, leaving a permanent right
of property in the plaintiff. We are brought to the result, that in
this case the attempted transfer by the committee was imperative.
That to give it effect would be to disturb a fundamental principle
of private right, which is recognized and secured by the constitu-
tion. The operation of the statute, upon highways created since
its passage, is left to be settled, when a proper case shall require it.

Judgment of the county court affirmed.