Vermont Superior Court
Filed 07/08/25
Orange Unit

VERMONT SUPERIOR COURT    CIVIL DIVISION
Orange Unit                                    Case No. 23-CV-00195
5 Court Street
Chelsea VT  05038
802-685-4610
www.vermontjudiciary.org


John Echeverria and Carin Pratt
     Plaintiffs

v.

Town of Tunbridge
     Defendant


### Decision on Cross-Motions for Summary Judgment

At issue is whether Vermont towns have the authority to maintain their public trails, or whether the right of maintenance is instead reserved solely to the owner of the property underlying the public easement.


*Facts*

The following undisputed facts are set forth in the light most favorable to plaintiffs John Echeverria and Carin Pratt. About a decade ago, plaintiffs bought a historic hill farm that straddles the town lines between Tunbridge and Strafford. Since then, plaintiffs have expended considerable time, effort, and resources repairing and restoring the farmhouse and farm buildings, reconstructing stone walls, rejuvenating apple orchards, and reestablishing traditional agricultural practices.

There are two public trails that cross the Tunbridge portion of the farm. The trails were created by the town in 1987, but the town has never maintained its trails. Instead, plaintiffs maintained the trails after they bought the property. At the time, the trails were used mostly by hikers.

A controversy arose when bicycle enthusiasts began advocating for the town to permit bicycle use of the trails. One of the trails, in particular, is viewed as a desirable connector between two public dirt roads that are popular amongst bicyclists. The town discussed this trail-use proposal at multiple public meetings, which were contentious in nature. Plaintiffs were among those who opposed the use of public trails by bicyclists. After the controversy arose, plaintiffs expressed their disapproval by ceasing their maintenance of the trails, which resulted in overgrowth and uncleared blowdown. The lack of maintenance has had the effect of preventing at least some users (including bicyclists) from using the trails.

In response, the town has adopted new procedures for maintaining the public trails. The town proposes to allow private individuals to apply for and receive permission from the selectboard to maintain and repair the trails on behalf of the town. Plaintiffs oppose these procedures and contend that the town has no authority to maintain the trails. Plaintiffs have further expressed that they will not maintain the trails again unless and until the town adopts trail-use policies that meet with their approval.

*Procedural History*

In this civil action, plaintiffs seek a declaration that towns lack authority to perform any maintenance or repair activities on public trails. A prior round of litigation established that the request for declaratory judgment is ripe, because the town's newly-adopted maintenance policies amount to "concrete steps manifesting [the town's] intent to enter onto plaintiffs' property for the purpose of improving the trails." *Echeverria v. Town of Tunbridge*, 2024 VT 47, ¶ 19. On remand, both parties have filed motions for summary judgment regarding the substantive issue, and both parties agree that the material facts are undisputed.

Generally, the task of statutory interpretation requires the court to ascertain and implement the intent of the General Assembly. *Sagar v. Warren Selectboard*, 170 Vt. 167, 171 (1999). If the General Assembly has plainly stated its intentions, a court must apply the plain meaning of the applicable statutes. *Id*.

Here, while this case was pending, the General Assembly made its current intentions clear by passing a new law clarifying that towns "shall have the authority to maintain trails." 2025, No. 66, § 45. The General Assembly supported this new law with findings explaining that trails "may require regular maintenance to ensure that they remain passable and can continue to support recreation, travel, access, and various public services." *Id*. § 44. The General Assembly furthermore explained that its intent was to "clarify municipalities' authority to exclusively or cooperatively maintain legal trails." *Id*.

Following the enactment of Act 66, the parties expressed their shared opinion that the new legislative action did not moot the current request for declaratory relief. Both parties focused upon the fact that the provisions of Act 66 do not become effective until April 1, 2026. *Id*. § 46. Plaintiffs also argued that the new legislative enactment provides evidence that towns had no authority to maintain trails prior to this legislative action, and that implementation of Act 66 might be reconsidered by the General Assembly because it "could result in unconstitutional takings of property rights from Vermont landowners with legal trails and impose unanticipated financial liabilities on Vermont towns."

For these reasons, the request for declaratory relief is not moot, and the court issues this opinion, which considers whether towns had the authority to maintain their public trails prior to the enactment of Act 66. Because there is no statutory provision that unambiguously resolves this question, the court must "look to a variety of sources for meaning, including the legislative history, purpose, context, and effects" of the statutes. *Polly's Properties, LLC v. Dep't of Taxes*, 2010 VT 41, ¶ 6, 188 Vt. 157.

The court begins with a historical overview of the authority of Vermont towns to lay out and maintain their public highways. The court then recounts the nineteenth-century history of municipal liability for negligent highway maintenance and explains the ways in which that history informed four different twentieth-century responses: the development of municipal-immunity doctrines, the advent of public trails, the provision of state financial aid for town highways, and the now-familiar system of road classification. The court then reads the pre-Act 66 statutes in the context of this history, and responds to the various arguments made by the parties.

*Historical Overview*

Vermont towns have been statutorily authorized to lay out highways since at least 1797. See *Patchen v. Morrison*, 3 Vt. 590, 592–93 (1831) (recounting the early history of highway-related legislation in Vermont). In the early days of the state, public highways were viewed as necessary to development: farmers and homesteaders needed reliable access to their lands without having to rely upon permission from others. See *Paine v. Town of Leicester*, 22 Vt. 44, 49–50 (1849) (explaining that farmers without highway access to their properties would otherwise have to "cross a mountain with [their] produce, or bargain with a crusty neighbor, as best [they] can, or commit a trespass, every time [they] enter[] upon [their] own land, by crossing that of others").

Although there were several different ways in which highways could be created, early cases established a general understanding that the laying out of a highway created a public easement: the owner of the land "retain[ed] the fee of the soil" under the newly-laid out highway, *Holden v. Shattuck*, 34 Vt. 336, 342 (1861), and the public "acquire[d] . . . an easement in the land; the right of making, repairing, and using the highway, as an open passage or thoroughfare." *Pettibone v. Purdy*, 7 Vt. 514, 520 (1832). Other nineteenth-century cases expressed the same idea: the establishment of a highway meant that the public obtained "an easement . . . for building and maintaining a suitable way, and of using the way, when constructed, for passing and repassing." *Cole v. Drew*, 44 Vt. 49, 52–53 (1871). In other words, the nineteenth-century understanding was that the establishment of a public highway created a public easement, which the town had the right to control through building, maintenance, and repair, and which the public had the right to use. See Restatement (Third) of Property, Servitudes § 2.18(2) (explaining that, as a general rule, the "right to control" a public easement is located in the government, and the "right to use" the public easement "extends to the public at large").

Early Vermont statutes also established that towns owed a duty of care with respect to their rights to control public easements: towns were obligated to keep their public highways "in good and sufficient repair at the expense of the town, at all seasons of the year." See *Sagar v. Warren Selectboard*, 170 Vt. 167, 174 (1999) (recounting early legislative road-maintenance requirements). The duty of care was enforced through numerous private lawsuits, which established a rule that towns were liable for any negligent failure to "keep their highways and bridges reasonably safe for travel thereon." *Moody v. Town of Bristol*, 71 Vt. 473, 475 (1899). Liability was therefore imposed upon towns for injuries caused by unrepaired washouts, e.g., *id*., unplowed snowfalls, e.g., *Barton v. Town of Montpelier*, 30 Vt. 650, 653 (1858); *Green v. Town of Danby*, 12 Vt. 338, 341 (1840), unmaintained forest roads, e.g., *Kelsey v. Town of Glover*, 15 Vt. 708, 715 (1843), out-of-repair bridges and culverts, e.g., *Bardwell v. Town of Jamaica*, 15 Vt. 438, 442–43 (1843); *Noyes v. Town of Morristown*, 1 Vt. 353, 358 (1828), and negligent failures to construct adequate guardrails or other safety measures, e.g.,

*Drew v. Town of Sutton*, 55 Vt. 586, 589–90 (1882); *Hunt v. Town of Pownal*, 9 Vt. 411, 418–19 (1837); *Leicester v. Town of Pittsford*, 6 Vt. 245, 246 (1834). The idea of these cases was that responsibility for accidents should be assigned to "the party having the charge of, and responsibility for, the condition of the road." *Barton*, 30 Vt. 650, 653 (1858); *Sessions v. Town of Newport*, 23 Vt. 9, 12 (1847). Put another way, one of the defining features of 19th-century Vermont highway law was that towns were liable for highway "accidents and injuries caused by defects existing through any fault of the town." *Prindle v. Town of Fletcher*, 39 Vt. 255, 257–58 (1867); *Hunt*, 9 Vt. at 418–19; *Leicester*, 6 Vt. at 247.

It would be reasonable to assume that the prospect of tort liability created anxiety amongst town officials during the nineteenth century. It would also be reasonable to assume that selectboards were wary of the cost of building and maintaining public highways that served few residents, e.g., *Paine*, 22 Vt. at 49–50. At least four separate responses to these concerns have arisen over time.

The first response was the development of various municipal-immunity doctrines, e.g., *Latulippe v. City of Burlington*, 93 Vt. 434, 436 (1919). Although these doctrines developed somewhat slowly and unevenly, they are now generally understood to protect municipalities from tort liability related to negligent construction and maintenance of highways, even under fact patterns similar to those that generated lawsuits during the nineteenth century, e.g., *Civetti v. Turner*, 2020 VT 23, ¶ 7, 212 Vt. 185; *Graham v. Town of Duxbury*, 173 Vt. 498, 499 (2001) (mem.); *Hillerby v. Town of Colchester*, 167 Vt. 270, 272 (1997); *Hudson v. Town of East Montpelier*, 161 Vt. 168, 170–71 (1993); cf. *Estate of Gage v. State*, 2005 VT 78, ¶ 7, 178 Vt. 212; *Lane v. State*, 174 Vt. 219, 228–29 (2002); *Lewis v. State of Vt.*, 289 F. Supp. 2456, 248–49 (D. Vt. 1968).

The second response was the 1921 introduction of the concept of public trails. Although there had been scattered references during the nineteenth century to the responsibility of towns to maintain "foot paths" along or near the margins of town highways, e.g., *Whitney v. Town of Essex*, 38 Vt. 270, 274–75 (1865), the first legislative reference to "trails" came in 1921, when the Legislature passed a law allowing towns to lay out "trails" in addition to laying out highways. Although the term "trail" was not defined in the 1921 legislation, the understanding seems to have been that "trails" were "but a foot path" that "require[d] an easement only over sufficient land to allow pedestrian travel." *Whitcomb v. Town of Springfield*, 123 Vt. 395, 397 (1963). The specific language of the 1921 legislation was as follows: "Selectmen shall, as the convenience of the inhabitants and the public good require, lay out, alter and discontinue highways, *and pent roads and trails shall be deemed highways.*" 1921, No. 121, § 1 (emphasis added).

The 1921 authorization to lay out trails was paired with a new provision explaining that "[a] town shall not be liable for the construction, maintenance or repair of a trail laid out under the provisions of the preceding section." 1921, No. 121, § 4. As evident from the previous discussion, this was a departure from the then-existing rules requiring that town highways be kept in "good and sufficient repair," and appears to have been meant to ensure that towns would not be sued—held "liable for"—negligent maintenance of any trails laid out under the new statute. A later case described the "undoubted purpose" of the 1921 public-trails legislation as allowing towns to preserve public easements over land while "avoid[ing] the expense of maintaining a road." *Whitcomb*, 123 Vt. at 399. A number of cases over the past century have reflected the practice of towns reclassifying certain roads as trails for this reason, e.g., *Demarest v. Town of Underhill*, 2013 VT 72, ¶ 22, 195 Vt. 204; *King v. Town of Craftsbury*, 2005 VT 86, ¶ 5, 178 Vt. 623 (mem.); *In re Town Highway No. 20*, 2003 VT 76,

¶ 13, 175 Vt. 626 (mem.); *Perrin v. Town of Berlin*, 138 Vt. 306, 307 (1980); *Whitcomb*, 123 Vt. at 397; *In re Petition of Mattison*, 120 Vt. 459, 462–63 (1958).

It is noteworthy that, although the 1921 legislation made clear that towns could not be held liable for failing to maintain their public trails, nothing in the 1921 legislation suggested that towns lacked authority to build or maintain the public trails laid out under the provisions of that law. Nor was there any provision in the 1921 legislation suggesting that the "right to control" public trails was located anywhere other than in the municipality. And although the court has conducted its own research, and the parties have researched and briefed the issue extensively, there does not appear to be any historical record of any suggestion that the construction or maintenance of public trails during the twentieth century were tasks reserved to the underlying landowner, rather than vested in the town as part of its general responsibility for controlling public easements.

A third response to concerns about highway expenses came in 1927 with a package of state financial aid: the idea was that state highway funds would be made available to towns "to assist . . . in the maintenance of snow or winter roads for motor vehicle traffic." 1927, No. 65, § 1. In other words, the state offered its assistance to towns in defraying the costs of maintenance of local highways. A condition of this assistance was that towns that accepted state highway funds promised to keep their "state aid highways" open all winter, even if the town did not plow other local roads. *Sagar*, 170 Vt. at 172–73. And although this system seems clear enough, it was evidently difficult to manage, and towns accepted state highway funds for roads that they did not actually plow during the winter. *Id*. A series of amendments to the system were attempted at various times, but they were unsuccessful in bringing order to the state-aid system. *Id*. Meanwhile, the series of amendments did not change anything about the law of public trails. The provisions of the 1921 legislation were carried forward in the 1933 Public Laws, P.L. §§ 4741–4742, the 1947 Vermont Statutes, V.S. §§ 5012–5013, and the 1958 Vermont Statutes Annotated, 19 V.S.A. §§ 292–293.

The fourth response to concerns about highway expenses came in 1973, when the General Assembly attempted to solve the state-aid funding problems by introducing the now-familiar system of road classification. The purpose of the revisions was to "ensure that state aid to local highways went only to roads that [were] passable year round." *Town of Calais v. County Road Commissioners*, 173 Vt. 620, 622 (2002) (mem.); *Sagar*, 170 Vt. at 173. Under the 1973 system, there were three classes of roads eligible for receipt of state financial assistance: extensions of state highway routes (class 1 town highways), the most important highways in each town (class 2 town highways), and all other traveled town highways that were "negotiable under normal conditions all seasons of the year" (class 3 town highways). 19 V.S.A. § 302(a)(1)–(3). Among the conditions for receipt of state aid was a general requirement that these roads be plowed and maintained all year. 19 V.S.A. §§ 302(a), 306–308.

A fourth class of highway (class 4 town highways) was described in the 1973 legislation as "all other town highways including trails and pent roads." 1973, No. 63, § 5. Class 4 highways (including roads, trails, and pent roads) were not eligible for state aid, and year-round maintenance of the roads was not mandatory. Instead, the 1973 legislation obligated towns to maintain their class 4 highways only "to the extent required by the necessity of the town, the public good and the convenience of the inhabitants." 1973, No. 63, § 20.

However—and perhaps confusingly—the 1973 legislation did not amend or change the existing rule that towns were "not . . . liable for the construction, maintenance or repair of a trail." 19 V.S.A. § 293 (1968 & Cum. Supp.). As such, although the 1973 legislation described trails as among the "class 4" highways that towns were obliged to maintain "to the extent required by the necessity of the town, the public good and the convenience of the inhabitants," 1973, No. 63, § 20, the rule remained after 1973 that towns were "not liable for the maintenance of a trail." *Perrin v. Town of Berlin*, 138 Vt. 306, 307 (1980).

Following the 1973 legislation, towns reclassified their town highways accordingly, and landowners brought court challenges and appeals. Foremost among these were two landmark decisions in which town residents successfully challenged classification decisions by proving that their towns had acted arbitrarily and capriciously in classifying certain roads as class 4 roads instead of class 3 roads, either because the decisions had been based upon personal animus, *Gilbert v. Town of Brookfield*, 134 Vt. 251, 253 (1976), or because there were other class 3 roads in the town with similar characteristics to the road that had been classified as fourth-class. *Id.*; *Catlin v. Town of Hartland*, 138 Vt. 1, 2 (1979).

In response to these and other similar cases, the General Assembly amended the classification statutes in 1979 to clarify that class 4 roads need not be reclassified to class 3 merely "because there exists within a town one or more class 3 highways with characteristics similar to the class 4 highway." 1979, No. 143 (Adj. Sess.), § 1; 19 V.S.A. § 708(b). A question left unaddressed by the 1979 legislation was whether courts might still require towns to repair their class 4 roads or otherwise maintain them by finding that such repairs were "required by the necessity of the town, the public good and the convenience of the inhabitants." 1973, No. 63, § 20. Again, the 1979 General Assembly made no changes to the rule that towns were "not liable for the maintenance of a trail." *Perrin*, 138 Vt. at 307.

In 1986, the General Assembly enacted a wholesale recodification of the highway statutes. 1985, No. 269 (Adj. Sess.), § 1. Existing cases have explained that the purpose of the 1986 revisions "was not to attempt to change any of Title 19 but rather to clean it up and recodify it." *Sagar*, 170 Vt. at 175–76 (internal quotations omitted); *Pidgeon v. Vermont State Transportation Bd.*, 147 Vt. 578, 583 (1987). And, for the most part, the system of road classification was merely restated, rather than amended in any way. In particular, the 1986 amendments made no attempt to address the question left open by the 1979 clarification: whether courts might require towns to repair their class 4 roads or otherwise maintain them by finding that such repairs were "required by the necessity of the town, the public good and the convenience of the inhabitants." 19 V.S.A. § 310(b).

The 1986 recodification made several changes to the public-trails statutes, however. The first change was a formal definition of the term trail: a "trail" was defined as:

> *a public right-of-way which is not a highway* and that: (A) previously was a designated town highway having the same width as the designated town highway, or a lesser width if so designated; or (B) a new public right-of-way laid out as a trail by the selectmen for the purpose of providing access to abutting properties.

1985, No. 269 (Adj. Sess.), § 1; 19 V.S.A. § 301(8) (emphasis added). The meaning of this change is disputed by the parties, and will be addressed in more detail below.

The second change was the addition of language clarifying that selectboards have "the duty and responsibility" to "make regulations governing the use of . . . trails." 1985, No. 269 (Adj. Sess.), § 1; 19 V.S.A. § 304(a)(5). In other words, in addition to defining trails as public easements that are not highways, the 1986 legislation defined the size of public trails ("the same width as the designated town highway, or a lesser width if so designated") and the use of public trails (as regulated by the selectboard). A subsequent 1991 amendment also allowed trails to be laid by town selectboards "for recreational use[s]" as well as for providing access to abutting properties. 1991, No. 47, § 1; 19 V.S.A. § 301(8)(B). Otherwise, following the 1986 recodification, the rule remained that towns "shall not be liable for construction, maintenance, repair, or safety of trails." 19 V.S.A. § 310(c).

Later, a 2002 court case answered the question left open by the 1979 legislative clarification: although the town in that particular court case had not abused its discretion in declining to repair a certain class 4 road, the possibility was left open that towns might be required to repair or maintain a class 4 road if a resident shows that a particular repair decision was not consistent with the town's roads policy, or that the town otherwise acted in "an arbitrary and discriminatory fashion." *Town of Calais v. County Road Commissioners*, 173 Vt. 620, 620–21, 624 (2002) (mem.); cf. *Villeneuve v. Town of Essex*, 167 Vt. 618, 619–20 (1998) (mem.) (explaining authority of courts and county road commissioners to order towns to make repairs to town highways, even if the repairs are expensive). However, dicta in the *Town of Calais* case and other recent cases have tended to make clear that a court cannot require towns to expend funds for the maintenance of trails. *Town of Calais*, 173 Vt. at 623; accord *In re Town Highway No. 20*, 2012 VT 17, ¶ 61 n.9, 191 Vt. 231; *In re Town Highway No. 20*, No. 2014-386, 2015 WL 2383677, at *4 (Vt. May 14, 2015). In that sense, the case law indicates that the effects of the 1973 and 1986 legislative amendments have been to create a system of public easements regarding (1) highways that towns are obligated to maintain year round (class 1, 2 and 3 highways), (2) highways that towns are obligated to maintain only to the extent required by the necessity of the town, the public good, and the convenience of the inhabitants (class 4 highways), and (3) public trails that towns are authorized but not obligated to maintain.

Current practice reflects the same understanding. The undisputed facts show that, as of early 2025, more than 150 Vermont towns had at least one public trail, and that there were more than 540 miles of public trails in the state that support access to abutting properties and a variety of recreational uses. The undisputed summary-judgment record also includes an October 2024 survey conducted by the Vermont League of Cities and Towns. That survey showed that: (1) public trails are used by hikers, skiers, horseback riders, all-terrain vehicle enthusiasts, snowmobile enthusiasts, and bicyclists, amongst other users; (2) some towns do not maintain their trails, but many towns do; (3) the towns that maintain their trails engage in brush clearing, grading, ditching, tree clearing, posting signage, mowing, managing vegetation, installing gates, snowplowing, or sanding, amongst other maintenance activities; and (4) many towns fund their trail-maintenance work either directly (through town budgets) or through grants and donations from non-profit recreational groups, land trusts, and private landowners.

The following excerpts are the current statutes relating to trails, as those statutes existed prior to Act 66.

19 V.S.A. § 301. Definitions.

As used in this chapter:

\* \* \*

(8) "Trail" means a public right-of-way that is not a highway and that:

(A) previously was a designated town highway having the same width as the designated town highway, or a lesser width if so designated; or

(B) a new public right-of-way laid out as a trail by the selectmen for the purpose of providing access to abutting properties or for recreational use. Nothing in this section shall be deemed to independently authorize the condemnation of land for recreational purposes or to affect the authority of selectmen to reasonably regulate the uses of recreational trails.

\* \* \* \*

19 V.S.A. § 302. Classification of town highways

(a) For the purposes of this section and receiving State aid, all town highways shall be categorized into one or another of the following classes:

\* \* \*

(5) Trails shall not be considered highways and the town shall not be responsible for any maintenance, including culverts and bridges.

\* \* \*

(7) Reclassification of unidentified corridors. On or by July 1, 2015 and pursuant to chapter 7, subchapter 2 of this title, an unidentified corridor may be reclassified as a class 1, 2, 3, or 4 highway or as a trail.

\* \* \* \*

19 V.S.A. § 304. Duties of selectboard

(a) It shall be the duty and responsibility of the selectboard of the town to, or acting as a board, it shall have the authority to:

(1) See that town highways and bridges are properly laid out, constructed, maintained, altered, widened, vacated, discontinued, and

operated, when the safety of the public requires, in accordance with the provisions of this title.

\* \* \*

(5) Grant permission to enclose pent roads and trails by the owner of the land during any part of the year, by erecting stiles, unlocked gates, and bars in the places designated and to make regulations governing the use of pent roads and trails and to establish penalties not to exceed $50.00, for noncompliance. permission shall be in writing and recorded in the town clerk's office.

\* \* \* \*

19 V.S.A. § 310. Highways, bridges, and trails

(a) A town shall keep its class 1, 2, and 3 highways and bridges in good and sufficient repair during all seasons of the year, except that based on safety considerations for the traveling public and municipal employees, the selectboard shall, by rule adopted under 24 V.S.A. chapter 59, and after following the process for providing notice and hearing in section 709 of this title, have authority to determine whether a class 2 or 3 highway, or section of highway, should be plowed and made negotiable during the winter. A property owner aggrieved by a decision of the selectboard may appeal to the Transportation Board pursuant to subdivision 5(d)(9) of this title.

(b) Class 4 highways may be maintained to the extent required by the necessity of the town, the public good and the convenience of the inhabitants of the town, or may be reclassified using the same procedures as for laying out highways and meeting the standards set forth in section 302 of this title.

(c) A town shall not be liable for construction, maintenance, repair, or safety of trails.

\* \* \* \*

*Analysis*

At issue is whether towns have the authority to maintain and repair their public trails. As mentioned above, as of April 1, 2026, the answer to that question will be stated plainly in the statutes, and courts will be bound to conclude that towns "shall have the authority to maintain trails." 2025, No. 66, § 45; *Sagar v. Warren Selectboard*, 170 Vt. 167, 171 (1999). In the meantime, the parties have asked the court to determine whether towns are authorized to maintain their trails between now and April 1, 2026. Put another way, the question is whether towns were authorized to maintain their public

trails prior to the recent legislative enactment. For the following reasons, the court concludes that the text, history, and purpose of the applicable statutes all support an affirmative answer. See *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 12, 191 Vt. 76 (explaining that statutory interpretation looks to "the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement"); *Perry v. Medical Practice Bd.*, 169 Vt. 399, 406 (1999) (explaining that some legislative enactments are intended "to clarify rather than change existing law").

As to the text, the statutes define public trails as "public rights-of-way." 19 V.S.A. § 301(8). A "right-of-way" is "[t]he right to pass through property owned by another," and is typically understood as meaning either a private easement or a public easement. Black's Law Dictionary, Right-of-Way (online) (12th ed. 2024). As such, the court interprets the statutes as defining public trails to be public easements. A public easement, in turn, consists of a "right to use" the easement, which is extended to the public at large, and a "right to control" the easement, which is vested in the government. Restatement (Third) of Property, Servitudes § 2.18(2). Vermont statutes reflect this allocation of rights by providing that the public may use public trails for the purpose of "access to abutting properties or for recreational use," 19 V.S.A. § 301(8)(B), and by providing that towns may control public trails by laying them out and by making regulations regarding their use, 19 V.S.A. § 304(a)(1) & (5). Additionally, both black-letter law and existing Vermont cases explain that the "right to control" a public easement includes the right to "construct, improve, repair, and maintain improvements that are reasonably necessary" to support the use of the easement. Restatement (Third) of Property, Servitudes § 4.13, cmt. b; *Cole v. Drew*, 44 Vt. 49, 52–53 (1871); *Pettibone v. Purdy*, 7 Vt. 514, 520 (1832). As such, the court reads the statutory text as supporting the conclusion that public trails are public easements that the public has a right to use, and that towns have the right to control, including through construction, maintenance, and repair.

The history of the statutes relating to trails reflects the same understanding. As explained in detail above, towns were first authorized to lay out, alter, and discontinue public trails in 1921. At that time, the understanding was that trails were a form of public easement that the public had the right to use and that towns had the right to build and maintain, e.g., *Cole*, 44 Vt. at 52–53; *Holden v. Shattuck*, 34 Vt. 336, 342 (1861); *Pettibone*, 7 Vt. at 520, and that while towns were obligated to keep their public highways in good and sufficient repair, they were not liable for constructing, maintaining, or repairing their trails, 1921, No. 121, § 4. In other words, the understanding in 1921 was that towns had the authority (but not the obligation) to maintain and repair their public trails. This understanding continued without any changes between 1921 and 1973. See 19 V.S.A. §§ 292–293 (1958); V.S. §§ 5012–5013 (1947); P.L. §§ 4741–4742 (1933).

After the road-classification legislation of 1973, some of the nomenclature changed, but the understanding remained essentially the same: trails were "class 4" public highways, meaning that trails were a form of public easement that the public had the right to use and that towns had the right to build and maintain, e.g., 1973, No. 63, § 5; *Whitcomb v. Town of Springfield*, 123 Vt. 395, 397 (1963); *Abell v. Central Vermont Railway, Inc.*, 118 Vt. 189, 191 (1954), and that while towns were obligated to maintain their class 4 highways "to the extent required by the necessity of the town, the public good and the convenience of the inhabitants," 1973, No. 63, § 20, towns were not liable for constructing, maintaining, or repairing their trails, 19 V.S.A. § 293 (1973). In other words, the understanding after

1973 remained that towns had the authority (but not the obligation) to maintain and repair their public trails.

After the recodification of 1986, some of the nomenclature changed again, but the understanding remained essentially the same: although trails were no longer highways, they remained a form of public easement that the public had the right to use and that towns had the right to build and maintain, e.g., 19 V.S.A. §§ 301(8) & 304(a)(5); 1985, No. 269 (Adj. Sess.), § 1; Restatement (Third) of Property, Servitudes § 2.18(2), and towns were not liable for the "construction, maintenance, repair, or safety" of trails. 19 V.S.A. § 310(c). In other words, the understanding after 1986 remained that towns had the authority (but not the obligation) to maintain and repair their public trails.

The purpose of the statutes also reflects the same understanding. The whole point of a public easement is to enable the public to travel over the easement without having to "bargain with [the landowner], as best [they] can" for permission to do so. *Paine v. Town of Leicester*, 22 Vt. 44, 49–50 (1849); Restatement (Third) of Property, Servitudes § 2.18(2). It would defeat the purpose of a public easement to locate the "right to control" the easement not with the town but rather with the underlying landowner, and thus require the public to bargain with that landowner for the use of the easement. A landowner might simply refuse to allow a trail to be built or maintained, even if the trail has been laid out by the town for public use. Or one landowner might allow a trail to be built, but a subsequent purchaser might refuse to allow the trail to be maintained. Or one landowner along a lengthy trail might exercise an effective veto over the use of the entire trail, even if other landowners supported the public use. A reading of the statutes that permitted such a result would not result in a system of public easements, as "undoubted[ly]" intended by the General Assembly, *Whitcomb*, 123 Vt. at 399, but rather a system of public use of trails by landowner permission. The court cannot read the statutes in a way that would change the legislative meaning or otherwise "render the act ineffective." *Audette v. Greer*, 134 Vt. 300, 302 (1976); accord *Herrick v. Town of Marlboro*, 173 Vt. 170, 173 (2001).

Plaintiffs' proposed allocation of the "right to control" public easements with the underlying landowners is not reflected expressly anywhere in the statutes. Nowhere has the General Assembly stated that towns lack the authority to build or maintain their public trails. Nor has the General Assembly stated that town regulations of the uses of public trails are subject to landowner permission or approval. And although plaintiffs read the statutes as creating a "nuanced, thoughtful" public-private partnership for the management of public trails, there is nothing in the statutes that says anything of the sort. A court must give effect to the legislative choices that were actually made by the General Assembly, rather than read into the statutes different legislative choices that might have been made.

Plaintiffs' statutory interpretation proceeds primarily by negative inference. Plaintiffs find meaning in the statement that trails are not highways, 19 V.S.A. § 301(8), and interpret the highway statutes as excluding public trails from all of the various provisions that apply to highways. For example, from the provision that places town highways "under the general supervision and control of the selectmen of the town where the roads are located," 19 V.S.A. § 303, plaintiffs conclude that public trails are not "under the general supervision and control of the selectmen," because they are not highways. Likewise, because a separate provision makes it the duty and responsibility of town selectboards to "see that town highways . . . are properly . . . maintained," 19 V.S.A. § 304(a)(1), plaintiffs conclude that it is not the duty and responsibility to see that public trails are properly maintained, because they are not highways. Finally, because the statutes provide (as discussed in detail above) that towns have the discretion to maintain their class 4 roads "to the extent required by the

necessity of the town, the public good and the convenience of the inhabitants of the town," 19 V.S.A. § 310(b), plaintiffs conclude that towns do not have the authority to maintain their trails at all, because they are not class 4 highways.

In reading the statutes in this manner, plaintiffs rely upon the canon of interpretation that finds significance when the Legislature "includes particular language in one section of a statute but omits it in another section of the same act." *Fraser v. Sleeper*, 2007 VT 78, ¶ 10, 182 Vt. 206 (internal quotations omitted). Although there are times when this canon of interpretation reveals the legislative intent, the use of the canon in this particular case results in a proposed reading of the statute that appears to the court to be contrary to the legislative intent, rather than consistent with it. Any given rule of statutory construction "is an aid to be relied upon where appropriate, but not where it leads to a result inconsistent with legislative intent." *State v. O'Neill*, 165 Vt. 270, 275 (1996).

Here, the court sees no persuasive reason why public trails should be defined exclusively by comparison to public highways. A public trail is "not a highway," but it is still "a public right of way," 19 V.S.A. § 301(8), and, as set forth above, both black-letter law and two centuries of Vermont precedent provide guidance as to what it means for a public easement to exist. The court declines to utilize a canon of statutory construction that would change public trails from public easements to paths that the public may effectively use only with landowner permission.

Plaintiffs also interpret the liability provision in 19 V.S.A. § 310(c) (meaning the provision that towns shall not be "liable for" the construction, maintenance, repair, or safety of public trails) as depriving towns of the authority to maintain public trails. As shown above, this reading is inconsistent with the legislative history. At the time of the 1921 enactment of the liability provision, there was an entire body of law holding towns liable for negligent construction, maintenance, and repair of town highways. A simple and straightforward reading of the 1921 legislation is that it meant that towns would not be "liable for" the construction, maintenance, or repair of trails, in the sense that towns would not be "liable" in tort for any negligence related to those activities, nor "liable for" maintenance costs if the trails were not kept in "good and sufficient repair." 1921, No. 121, § 4; *Sagar v. Warren Selectboard*, 170 Vt. 167, 174 (1999). Nothing in the 1921 enactments, nor any of the contemporaneous caselaw, suggested that the General Assembly also meant by this legislation to deprive towns of any authority to maintain their public trails. Because the same basic language has been carried forward from 1921 to the present day, 19 V.S.A. § 310(c), the court reads the current statutes the same way.

Plaintiffs have also interpreted the 1986 recodification as representing a legislative determination that maintenance of trails should no longer be performed by towns but rather should be undertaken in the form of a public-private partnership. After a careful review, the court cannot find any such intention expressed affirmatively anywhere in the recodification. Nor does the court infer that the General Assembly intended any modification of the authority of towns to maintain their public easements, because the two fundamental provisions of the 1921 trails legislation—that towns have the authority to lay out trails, and that towns shall not be liable for the construction, maintenance, or repair of trails—were carried forward and restated by the 1986 recodification. See P.L. §§ 4741–4742 (1933); V.S. §§ 5012–5013 (1947); 19 V.S.A. §§ 292–293 (1958); 19 V.S.A. §§ 301(8) & 310(c) (2025). Given that the 1986 recodification has been described as a restatement and clarification of existing law, *Sagar*, 170 Vt. at 175–76; *Pidgeon v. Vermont State Transportation Bd*., 147 Vt. 578, 583 (1987), the court is reluctant to infer that the legislation intended new and elaborate, but hidden, meanings.

To the extent that an explanation is needed for the 1986 amendment to the definition of trails, the legislation was intended to "clean . . . up" the highway statutes. *Sagar*, 170 Vt. at 175–76. One of the areas of highway law that perhaps needed cleanup was the inclusion of trails within the definition of class 4 highways, and the resulting tension between the obligation of towns to maintain their class 4 highways to the extent required by the necessity of the town, the public good, and the convenience of the inhabitants, and the separate provision that towns were not obligated to construct, maintain, or repair their trails. It would have been reasonable for the 1985–86 General Assembly to think this confusing, and to think it simpler to say that trails were not highways but rather "public rights of way" that towns were not obligated to construct, maintain, or repair. It would have been likewise reasonable for the 1985–86 General Assembly to be attuned to this issue in light of the litigation regarding whether towns might be ordered by courts to repair their class 4 roads. The chosen fix to this issue appears to have been to restate the same understanding of public trails as had existed since 1921: towns have the authority to lay out and control their public trails, but are not liable for their construction, maintenance, or repair. Again, given that the 1986 recodification has been described as a restatement and clarification of existing law, *Sagar*, 170 Vt. at 175–76; *Pidgeon*, 147 Vt. at 583, a simple explanation is the one more likely to be consistent with the legislative intent.

Plaintiffs have also argued that the 1973 legislation and 1986 recodification were meant to ensure that Vermont towns did not "go broke." See, e.g., Pl.'s Mem. in Supp. of Mot. for Sum. J. at 20–25 (filed Nov. 15, 2024). To the extent that plaintiffs' arguments derive from the expressed views of individual legislators or legislative witnesses, the court accords those views little persuasive weight in its analysis. *In re Investigation to Review Avoided Costs that Serve as Prices for the Standard-Offer Program in 2020*, 2021 VT 59, ¶ 14, 215 Vt. 247. Otherwise, although the existing cases provide other explanations for both legislative enactments (e.g., as described above, the 1973 legislation was meant to address problems with the state-aid funding system, and the 1986 recodification was meant to "clean . . . up" the highway laws), the court does not doubt that Vermonters have been concerned about highway costs and liabilities for more than two centuries. Indeed, the court has identified examples of this concern in the legislative history recounted above. But the court does not read the 1973 legislation and the 1986 recodification to mean that the Legislature solved this problem by "eliminating entirely municipal authority to maintain legal trails," Pl.'s Mem. in Supp. of Mot. for Sum. J. at 23, and replacing it instead with a regime in which "trail maintenance should be left to landowners working in cooperation with the community." *Id*. at 25. For all of the foregoing reasons, the court simply does not find such a solution to be expressed anywhere in those legislative enactments or the current statutes.

Plaintiffs have also argued that the authority of towns to repair and maintain their public trails must be expressly stated in the statutes, and cannot be inferred, because Vermont towns have only the powers "expressly delegated to them by legislative enactment" and have "no rights . . . outside the limits of legislative control." *Ferry v. City of Montpelier*, 2023 VT 4, ¶ 45, 217 Vt. 450. Although a version of this sentiment is ordinarily expressed by the rule that "a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof," *City of Montpelier v. Barnett*, 2012 VT 32, ¶ 20, 191 Vt. 441 (quoting *Hinesburg Sand & Gravel Co. v. Town of Hinesburg*, 135 Vt. 484, 486 (1977)), plaintiffs argue that a more basic separation-of-powers principle is involved in this case: the court cannot infer any rights of maintenance or repair because "[t]he Vermont legislature has clearly expressed its intention that municipalities not have the authority to maintain or repair legal trails." See, e.g., Pl.'s Mem. in Supp. of Mot. for Sum. J. at 6–16 (filed Nov. 15, 2024). As discussed, the court

does not find in the current statutes any clear legislative intention to deprive municipalities of the authority to maintain or repair their legal trails. Instead, the court finds that public trails have been defined as public rights-of-way, and that there are two centuries of precedent supporting the view that towns have the right to build and maintain their public easements. For these reasons, the court does not find persuasive plaintiffs' concerns that it would be unconstitutional for towns to maintain their public trails.

Plaintiffs have also argued that the legislative scheme is inadequate because it does not express "how the legislature intended to divide the authority to manage legal trails between towns and landowners whose property is crossed by legal trails." See Pl.'s Opp. to Town of Tunbridge's Mot. for Sum. J. at 16 (filed Dec. 9, 2024). The answer is simple and expressed by statute and common law: towns have the right to create and control public easements, and the public has the right to use public easements. The width and uses of the easement are defined by statute and supplemented by regulation, 19 V.S.A. §§ 301(8) & 304(a)(5), and the common law provides sufficient guidance to ensure that rights of control are exercised within the scope of an easement. Restatement (Third) of Property, Servitudes §§ 2.18 & 4.13. Additional enactments do not appear to the court to be structurally necessary in order to conclude that the General Assembly intended for public trails to be public easements.

Plaintiffs have also made numerous interwoven arguments, and a variety of arguments that respond either to anticipated or actual arguments made by the town. To the extent that they were not addressed in this opinion, the court determined that the arguments were either not persuasive or not relevant to its analysis and determinations.

The court's final observation is that real-life experience has been that Vermont towns are maintaining their trails. More than 150 towns have at least one trail, and there are more than 540 miles of public trails in the state. And while at least some private landowners are helping maintain public trails, many towns are maintaining their trails to keep them open for public use. In other words, widespread contemporaneous interpretation has been that towns have the authority to maintain and repair their public trails. See *State v. Rutland Railway Co.*, 81 Vt. 508, 513 (1908) (explaining that, in statutory interpretation, courts give weight to "contemporaneous practical construction" of statutes); 2B Sutherland Statutory Construction § 49:3 (7th ed.) (explaining that "[t]he long-continued contemporaneous and practical interpretation of a statute by executive officers charged with its administration and enforcement, courts, and the public is an invaluable aid to construction"). A reading of the statutes that authorizes towns to maintain and repair their public trails would be consistent with more than a century of both legal precedent and practical experience.

*Conclusion*

For the foregoing reasons, the court concludes that Vermont towns have the authority to maintain and repair their public trails.

*Orders*

(1) Defendant's Motion for Summary Judgment (Motion 9), filed November 15, 2024, is granted;

(2) Plaintiffs' Motion for Summary Judgment (Motion 10), filed November 15, 2024, is denied;

(3) A final judgment order shall issue separately.

Electronically signed on Tuesday, July 8, 2025 pursuant to V.R.E.F. 9(d).

H. Dickson Corbett
Superior Court Judge